W. Z. THOMPSON v. GRAND INTERNATIONAL BROTHERHOOD OF LOCO-
MOTIVE ENGINEERS ET AL.

Decided December 20, 1905.

**1.—Brotherhood of Locomotive Engineers—Expulsion—Pretext—Question of Fact.**

Plaintiff was a member in good standing in the Brotherhood of Locomotive Engineers, and held his membership in Division 201. Charges were preferred against him in this Division for "unbecoming conduct and violating his obligation." Under this charge there were two specifications. For the first specification the Division might lawfully expell a member; for the second specification they could not do so because it would violate the laws of the land and an inalienable right of the member. After trial upon said charges plaintiff was expelled from the Brotherhood. Plaintiff alleged, and introduced sufficient proof to raise the issue, that the first specification was only a pretext, and that he was in fact expelled upon the second specification. Held, the issue should have been submitted to the jury and it was error for the court to instruct a verdict for defendants.

**2.—Unlawful Requirement.**

A regulation or requirement of an organization which forbids a member to appear in court and testify to the injury of other members is unlawful and void.

**3.—Expelled Member—Remedy.**

An expelled member is not required to exhaust his remedies within the order to correct a wrongful expulsion before bringing a suit for damages.

**4.—Damages—Elements.**

It is proper and material to prove on the issue of damages sustained by a member wrongfully expelled, the publication of the fact of expulsion, the value of the insurance policy in the order, of the traveling card, and of the sick benefits.

**5.—Evidence—Relevant and Irrelevant.**

Testimony of witnesses considered, and its relevancy and irrelevancy determined.

Appeal from the District Court of Smith County. Tried below before Hon. R. W. Simpson.

*John M. Duncan* and *H. E. Lasseter,* for appellant.—This not being a proceeding for reinstatement, but to recover damages for expulsion and libel done in bad faith, without probable cause, wrongfully and maliciously, the action would lie as brought, and plaintiff's remedy was not by mandamus, and the court erred in holding that mandamus was plaintiff's exclusive remedy.

The doctrine that relief must be sought within the corporation only

and necessarily applies to cases where the relief sought is restoration to membership. Beacon on Ben. Soc., sec. 442, and cases cited; Screwmen v. Benson, 76 Texas, 552; State v. Lipa, 28 O. St., 665; Commonwealth v. Union League, 8 Law Rep. Ann., 195, and note; Lamphere v. Grand Lodge, 47 Mich., 429; Washington, etc., v. Bacher, 20 Pa., 425; Ludowiskie v. Polish, etc., 29 Mo. App., 337; Lahiff v. St. Joseph, etc., 65 Law Rep. Ann., 92, and cases cited in opinion; Burt v. Grand Lodge, 66 Mich., 33 N. W. Rep., 13; Cotton Jammers, etc., v. Taylor, 56 S. W. Rep., 553.

.The action of all defendants in expelling and causing plaintiff to be expelled from the Brotherhood, and in publishing and causing to be published the alleged libel, being alleged by plaintiff to have been inspired by malice, want of good faith, done wilfully and maliciously without cause, oppressively, and for the wilfull and malicious purpose of depriving him of the benefit of membership in the Brotherhood; of the benefit of an insurance policy carried therein, and of a traveling card, and to injure him in his character and property, and that these results had followed, and the proof supporting and tending to support all these allegations, the court erred in taking the decision of the case from the jury by instructing them peremptorily to return a verdict for the defendants. Holt v. Parsons, 23 Texas, 9; White v. Nichols, 44 U. S., 26.

The defendant Brotherhood is a corporation, and the legal principles applicable to its acts and affairs must be determined by the laws governing corporations, and not by those applicable to unincorporated mutual benefit associations. Bacon on Ben. Soc., 95, 106, p. 217, and notes 1 and 2, 107, 61a, 71 note 1, p. 141, 72, 148 et seq.; Cotton Jammers v. Taylor, 56 S. W. Rep., 553; Catholic Knights v. Gambati, 29 Texas Civ. App., 80.

The action of defendants, including the Brotherhood, being charged to have been not bona fide, but in bad faith, malicious, capricious and other than a fair and honest exercise of authority, and there being evidence to support these allegations, the court should have taken cognizance of the case and submitted the issues to the jury without regard to plaintiff's remedies within the corporation by appeal or otherwise. 1 Thomp. on Corp., secs. 916, 918, 926; Bacon on Ben. Soc., 101, 102, and case cited in note 1, page 198, secs. 107, 109, 400 a p. 1012, 442, and cases cited; Brown v. American Freehold, etc., 10 Texas Ct. Rep., 676; Benson v. Screwmen, etc., 21 S. W. Rep., 562; Murray v. Sup. Hive., 80 S. W. Rep., 827 (Tenn.); Connelly v. Massachusetts Mut., etc., 9 Law Rep. Ann., 428; Otto v. Journeymen Tailors, etc., 75 Cal., 308; State v. Lipa, 28 Ohio St., 665; Commonwealth v. Union League, 8 Law Rep. Ann., 195, and note; Lamphere v. Grand Lodge, 47 Mich., 429; Washington v. Bacher, 20 Pa., 425; Ludowiskie v. Polish, etc., 29 Mo. App., 337; Lahiff v. St. Joseph, etc., 65 Law Rep. Ann., 92, and cases cited in opinion; Burt v. Grand Lodge, 66 Mich., 33 N. W. Rep., 13; People v. Ger. Union, 53 N. Y., 103.

There being no remedy within the corporation nor otherwise than in the courts on the causes of action for damages sued on by plaintiff, and there being evidence to support his allegations, the court erred in refus-

ing to submit the issues to the jury. Screwmen, etc., v. Benson, 76 Texas, 552.

Division 201 was, under the law governing corporations and under the Constitution and laws of the Brotherhood, an integral part and general agent of the corporation in Texas so as to make said corporation responsible for the acts and motives of the local division and its members as such in the matters alleged by the plaintiff, without regard to whether the corporation in Ohio had actual notice of such acts and motives, and thus the court erred in instructing a verdict for the defendant. Bacon on Ben. Soc., secs. 118, 119, 144, and note 1; Catholic Knights v. Gambati, 29 Texas Civ. App., 80; Bragaw v. Sp. Lodge, 54 Law Rep. Ann., 602; Mitchell v. Leech, 66 Law Rep. Ann., 723; St. Louis & S. W. Ry. Co. v. McArthur, 72 S. W. Rep., 76; Times Pub. Co. v. Carlisle, 94 Fed. Rep., 762; Missouri Pac. Ry. Co. v. Bebee, 2 Texas Civ. App., 107.

Plaintiff's remedy by appeal to the Grand Convention being only permissive and not adequate, he was not required to pursue it further as a condition precedent to filing suit, even if his cause of action as alleged could have been involved in such appeal. Bacon on Ben. Soc., 450a; Sup. Lodge v. Dey, 58 Kan., 283, 49 Pac. Rep., 74; Bauer v. Samson Lodge, 102 Ind., 262.

The publication of the libel was not defended as privileged, but if privileged otherwise, it would not be so if inspired by malice or want of good faith, as alleged and supported by proof, and the court erred in not submitting the issue of libel to the jury. Missouri Pac. Ry. Co. v. Richmond, 73 Texas, 568; Cranfill v. Hayden, 75 S. W. Rep., 573; Holt v. Parsons, 23 Texas, 9; Hayden v. Cranfill, 80 S. W. Rep., 609 (Sup. Ct.); Davis v. Wells, 60 S. W. Rep., 566; St. Louis, etc., Ry. Co. v. McArthur, 72 S. W. Rep., 76; White v. Nichols, 44 U. S., 26 (L. C. Ed., 591); Brown v. Norfolk & W. Ry. Co., 60 Law Rep. Ann., 472; Times Pub. Co. v. Carlisle, 94 Fed. Rep., 762; Towns on Slander and Libel, secs. 210-212; Cooley on Torts, 220; Dement v. Houston Print. Co., 37 S. W. Rep., 985; Dem. Pub. Co. v. Jones, 83 Texas, 302; Missouri Pac. Ry. Co. v. Richmond, 73 Texas, 568; Ledgerwood v. Elliot, 51 S. W. Rep., 872; Brown v. Ind. Stone Works, 73 S. W. Rep., 800; Raymond v. Yarrington, 73 S. W. Rep., 800, 96 Texas, 449; Angle v. Chicago & St. P. Ry. Co., 151 U. S., 1; 3 Am. and Eng. Ency. Law, 1080.

There being property rights involved in plaintiff's expulsion and the consequences of such expulsion and libel being pecuniary loss and injury to property, business and good name, the same legal principles do not apply as in cases of expulsion from social clubs, churches and organizations of like character, but the courts will take cognizance of such cases and apply the remedy in a suit for damages, at the election of plaintiff, and for this reason the court erred in instructing a verdict for defendants. Bacon on Ben. Soc., 95, 106, 71, pp. 141-2; Odgers on L. & S., 17; Catholic Knights v. Gambatti, 29 Texas Civ. App., 80; Cotton Jammers v. Taylor, 56 S. W. Rep., 553; Screwmen v. Benson, 76 Texas, 552; Voluntary Relief v. Spencer, 17 Ind. App., 123; Byrd v. English, 64 L. R. A., 94, and note; Mentz v. Armenio Fire Ins., 79 Pa. St., 478; Sup. Counsel v. Garrigus, 104 Ind., 133; Ryan v. Cudahy, 157 Ill., 108; Bauer v. Samson Lodge, 102 Ind., 262; Repin v. Society St. Jean, 23

R. I., 81; Wicks v. Monihan, 130 N. Y., 232; Kistler v. Indianapolis, etc., Ry., 88 Ind. 460; Austin v. Searing, 16 N. Y., 112.

The alleged libel being actionable per se, the law will assume injury to character and feelings without proof, and there being proof tending to show all the general and special damages alleged as caused by the expulsion and libel, the court erred in instructing the jury to return a verdict for the defendants. Belo v. Fuller, 84 Texas, 450; Houston Printing Co. v. Moulden, 41 S. W. Rep., 381; People ex rel. Dilcher v. German, etc., 53 N. Y., 103; Maissenbacker v. Society, 71 Conn., 369-376; Gibney v. Lewis, 68 Conn., 392, 396 (36 At., 799).

The evidence in the case being such that ordinary minds might differ as to the conclusions to be drawn from it, the court erred in giving a peremptory instruction to the jury to return a verdict for the defendants. 3 Greenleaf on Ev., 94; Wallace v. Southern Oil Co., 91 Texas, 22; Holt v. Parsons, 23 Texas, 9; San Antonio v. Porter, 24 Texas Civ. App., 452; Houston Street Ry. Co. v. Medlenka, 17 Texas Civ. App., 625; Galveston, H. & S. A. Ry. v. Harris, 22 Texas Civ. App., 18; Lindsey v. Murphy, 48 S. W. Rep., 531; Garza v. Texas Mexican Ry. Co., 41 S. W. Rep., 172.

*Cain & Knox,* for Brotherhood of Locomotive Engineers and individual defendants.—Plaintiff was tried and expelled from division No. 201 in the manner provided by the constitution and by-laws of the order. Upon appeal from the decision of his lodge to the grand chief engineer, his appeal was overruled and the decision of his lodge sustained from which he took no further action within the organization. The sentence of expulsion having been in accordance with and under powers conferred by the constitution to which plaintiff subscribed when he became a member, the judgment is a final and binding adjudication and will not be reviewed in a court of law. Screwmen's Ben. Assn. v. Benson, 76 Texas, 555; Manning v. San Antonio Club, 63 Texas, 166; Austin v. Dutcher, etc., 56 N. Y. Rep. App. Div., 393; Lewis v. Wilson, 121 N. Y., 284.

Section 2 of article 9 of the constitution provides in terms that the decision of the grand chief engineer upon appeal shall be final unless reversed by the action of the next G. I. D. convention. This decision is final and concludes the plaintiff. a. Because the constitution so provides in express terms. b. Because courts of law will not take jurisdiction where all remedies within the association have not been exhausted. Screwmen's Ben. Assn. v. Benson, 76 Texas, 552; Womans Catholic O. of F. v. People ex rel. Keefe, 59 Ill. App., 39; The Ana Costa Tribe No. 120 of R. M. v. Murbach, 13 Md., 91 (71 Am. Dec., 625); Burt v. Grand Lodge F. & A. M., 44 Mich., 208; Karcher v. Supreme Lodge K. of H., 137 Mass., 368; Oliver v. Hopkins, 144 Mass., 175; State, Zeliff Prosecutor v. Grand Lodge K. of P., 53 N. J. Law, 536 (22 Atl. Rep., 63); Johansen v. Blume, 65 N. Y. Supp., 987.

In cases like the one at bar, the courts will go no further than to inquire whether or not the association has acted in accordance with its own laws (in other words that it had jurisdiction and proceeded regularly) and that its laws are not in conflict with the laws of the land.

Where a member of such an association is tried agreeably to the constitution and by-laws for an offense of which the association has a right by its constitution and by-laws to take cognizance, the courts will not in any form of proceeding retry the merits of the controversy for the reason that in such a case the member has been tried by a tribunal of his own choice, which judgment, like an award of arbitrators, concludes him. He is bound by the decision of his own forum. Connelly v. Masonic Mut. Ben. Assn., 58 Conn., 552; Medical & Surgical Soc. v. Weatherly, 75 Ala., 248; Leech v. Harris, 2 Brew. (Pa.), 571; Peyre v. Mutual Relief Soc. of French Zouaves, 90 Cal., 240; High Court I. O. of F. v. Zak, 35 Ill. App., 613; Spilman v. Supreme Council of Howe Circle, 128 Mass., 178.

When a member of a beneficial society complains of the action of his society in expelling him, the court must confine itself to those questions which involve some infraction of the organic law of the society, in other words, to some material irregularity in the proceedings, and can not pass upon the merits. Speery's Appeal, 116 Pa., 391 (90 Atl. Rep., 478); Albers v. Merchants Ex., 39 Mo. App., 583; Hutchison v. Lawrence, 67 How. Pr., 38.

What is conduct unbecoming a member of the Brotherhood of Locomotive Engineers is a question for the Brotherhood courts to decide and is not open to inquiry in a civil court. Kopp v. White, 65 N. Y. Supp., 1017.

Plaintiff wholly failed to offer any evidence establishing a conspiracy or in support of his claim for damages under his allegations of conspiracy. The acts shown to have been done by the defendants are not such as would have made either of them liable in a separate action and therefore the action for conspiracy failed upon the proof.

*E. B. Perkins* and *Marsh & McIlwaine,* for appellee St. Louis & S. W. Ry. Co.—The constitution and by-laws of a beneficial order or society are binding upon members inasmuch as they are conclusively presumed to have contracted to be bound thereby when they took membership in the society or order. Screwmen's Assn. v. Benson, 76 Texas, 555; 3 Am. and Eng. Ency. of Law, p. 1059.

Where the constitution and by-laws of a beneficial order or society provide a remedy by appeal, whereby a member may have his expulsion reviewed by a tribunal within the order or society, he can not, until he has exhausted the remedy so provided, resort to the civil courts to have his expulsion declared illegal. Screwmen's Ben. Assn. v. Benson, 76 Texas, 552; Cotton Jammers, etc., Assn. v. Taylor, 56 S. W. Rep., 553; 3 Am. & Eng. Ency. of Law, p. 1076, and authorities cited in note 2; Mead v. Stirling, 62 Conn., 586 (27 Atl. Rep., 591); Oliver v. Hopkins, 144 Mass., 175; Jeane v. Grand Lodge, 86 Me., 434 (30 Atl. Rep., 70).

Appellant having been served with a copy of the charges and having voluntarily appeared and stood his trial without objection, thereby submitted his person to the jurisdiction of the tribunal by which he was expelled, and the tribunal having jurisdiction of the subject matter— the power to determine whether appellant had forfeited his right to

continue as a member of the order—the judgment, order, finding or decree of such tribunal is conclusive and binding upon appellant. Commonwealth v. Pike Ben. Soc., 8 Watts & S., 247; Smiths' Society v. Vandyke, 2 Wharton (Pa.), 309; Board of Trade v. Nelson, 162 Ill., 431; Commonwealth v. Union League, 135 Pa. St., 301.

Appellant having been legally expelled from appellee order, the fact that members of the order were actuated by malice in bringing about his expulsion would give him no cause of action against either the order or the members through whose efforts the expulsion was brought about. Grand Order, etc., v. Schultze, 83 S. W. Rep., 241, and authorities cited.

The appellee order having the legal right to expel appellant and having expelled him legally, the fact that appellee railway company may have conspired to bring about his legal expulsion would not render it liable to him for damages resulting from such expulsion. Grand Order, etc., v. Schultze, 83 S. W. Rep., 241; Ellis v. Valentine, 65 Texas, 548; Raymond v. Yarrington, 96 Texas, 449.

Though a member be wrongfully expelled from a beneficial order, he can not maintain an action to recover damages for his wrongful expulsion, but his only and sole remedy is to have himself reinstated by mandamus. Peyre v. Mutual Relief Society, 27 Pac. Rep., 191; Lavalle v. Society, 24 Atl. Rep., 467.

The expulsion of appellant having been published in the official organ of the order, as provided by the constitution, the publication was, under the facts in this case, privileged and appellant can not recover damages therefor. Kirkpatrick v. Lodge, 26 Kan., 384 (40 Am. St. Rep., 317).

REESE, ASSOCIATE JUSTICE.—W. Z. Thompson instituted this action against the Grand International Brotherhood of Locomotive Engineers, a corporation created under the laws of Ohio, the St. Louis, Southwestern Railway Company of Texas, and J. J. Bartholomew, W. H. McCorkle, G. L. McCordel, M. M. Bartholomew and R. J. McCool, to recover damages for the alleged wrongful and malicious expulsion of the said Thompson from the Brotherhood, and the malicious publication in the Brotherhood Magazine that he had been expelled from the order for unbecoming conduct and violation of his obligation. The plaintiff's petition charged an unlawful combination and conspiracy among all of the defendants to have him expelled from said Brotherhood and to injure and defame him.

Defendants answered severally by general and special demurrers, general denial and special pleas in bar. The general demurrer and special exceptions were overruled. Upon the trial, after all of the evidence had been heard, the court instructed a verdict for the defendants. Motion for a new trial was overruled and plaintiff appeals.

Thompson was a locomotive engineer and had been at one time in the employ of the St. Louis Southwestern Railway Company of Texas as such, but had not been engaged in such work since November, 1901. He was, prior to his expulsion therefrom, hereinafter referred to, a member in good standing of the Brotherhood of Locomotive Engineers, an organization which includes nearly all of the locomotive engineers

of the United States, Canada and Mexico. The Grand Brotherhood is incorporated and is a benevolent and social order, its purpose being, as stated in its constitution, "To more effectively combine the interests of locomotive engineers, to elevate their standing as such, and their character as men." The headquarters of the corporation or Grand Brotherhood is at Cleveland, Ohio, and its supreme officer is styled grand chief engineer. Within the Grand Brotherhood, and in fact constituting the working machinery of the order, are certain local organizations styled subordinate divisions or subdivisions, presided over by an officer styled chief engineer, and having certain other officials. Through these subdivisions members gain admission to the order, and the subdivisions have likewise the power of expelling and otherwise disciplining the members. It is provided by the constitution that when a member is expelled by the action of a subordinate division he may appeal to the grand chief engineer whose decision shall be final unless reversed by the action of the next Grand International District Convention of the order.

Upon joining, members were required to take, under oath, an obligation in which they obligated themselves, among other things, not to "sign or circulate, or cause to be signed or circulated, any paper, circular, petition or document of any sort whatsoever calculated to injure or destroy the organization."

Among these subdivisions there was one, No. 201, located at Tyler, of which appellant was a member in good standing. The individual defendants, appellees here, were also members of this subdivision.

Members of the organization are entitled to certain benefits when sick or disabled, and there is connected with the organization an insurance department through which the order issues to its members insurance policies, one of which was held by appellant.

Another feature of the organization is that it issues to its members a traveling card by means of which they are enabled to travel on all railroad trains in the United States, Canada and Mexico without payment of fare.

These features of membership are of considerable pecuniary value, of which a member is deprived upon his expulsion from the order.

There is published by the International Brotherhood a monthly publication or magazine called "The Locomotive Engineers Monthly Journal," which is published at Cleveland, Ohio, and circulates among the members of the Brotherhood, about sixty thousand in number, and among others not members, mainly railroad people. It is provided by the constitution of subordinate divisions that all expulsions of members shall be published in this monthly journal.

The undisputed evidence shows the following facts:

On October 31, 1902, charges were preferred in Division 201, against appellant by W. H. McCorkle, first assistant engineer of the division, which said charges were in writing and are as follows:

"Tyler, Texas, October 31, 1902.
"To the Officers and Members of Division 201:

"I do hereby prefer charges against Brother W. Z. Thompson for unbecoming conduct and violating his obligation.

### SPECIFICATION OF CHARGES.

"For writing to Mrs. A. H. Penniman and urging her to sue the Cotton Belt Railway for the death of her husband.

"For going on the witness stand in the Bolton case and testifying against the Cotton Belt Railway to the injury of other Brothers and causing the Brotherhood at large to lose prestige with the Cotton Belt Railway.

Yours truly,<br>W. H. McCorkle, F. A. E."

Penniman was a locomotive engineer who had been killed while running an engine on the St. Louis Southwestern Railway. Mrs. A. H. Penniman was his widow. Penniman was a member of the Brotherhood.

A committee was appointed to investigate these charges and a copy was sent to appellant which he received. The committee made the following report:

"We, the committee on the Thompson, Kelton and Nichols case, find that the brothers have been guilty of giving evidence against the St. Louis Southwestern Company, also, in trying to get others to sue said company and get heavy damages, and acting as expert witnesses for plaintiff's attorneys. The above being detrimental to the brothers remaining in the service of the company, and can be deemed as unbecoming conduct and violation of obligation. Therefore division can take whatever steps are necessary in constitution and by-laws and deal with brothers accordingly."

At a regular meeting of the division the charges were heard, Thompson being present and making no objection to proceeding with the trial. A vote was taken which resulted in two voting for his expulsion and two against. Whereupon the chief engineer gave the casting vote in favor of expulsion of appellant from the order. Appellant thereupon appealed from the decision of the local division to P. M. Arthur, grand chief engineer of the Brotherhood, by whom the decision of the subordinate division was upheld, and appellant was finally expelled from the order. The effect of this expulsion was to cause appellant to be deprived of all of his benefits as a member of the order including the life insurance policy for $1,500 which he had been carrying for many years and upon which he had paid in premiums, $350.

Notice of appellant's expulsion was immediately published in the Journal of the Brotherhood, such publication being that W. Z. Thompson had been expelled by Division 201 for unbecoming conduct and violation of obligation.

It is alleged in appellant's petition that in preferring charges and in expelling him, the individual defendants, members of the subdivision, acted at the instance, suggestion and direction of the St. Louis Southwestern Railway Company; that they knew the charges to be false but acted wilfully, maliciously, without probable cause and for the purpose of injuring him.

These allegations are denied generally by appellee, who specially

plead that appellant was properly expelled, under charges preferred against him, and after trial in all respects in accordance with the terms and provisions of the constitution and by-laws of the order which are binding upon all members, that upon appeal to the grand chief engineer by appellant the action of the local subdivision was sustained, and that the decision of said grand chief engineer remains and is official and a binding and valid adjudication of the matters sought to be adjudicated by appellant in this suit, which is alleged to be a collateral attack upon the finding and judgment of said grand chief engineer and the subdivision of which appellant was a member.

It is contended by appellant that his expulsion was brought about as the result of a combination or conspiracy between the St. Louis Southwestern Railway Company, acting through its vice-president and general manager, W. E. Green, and the other defendants; that the members of Division 201 did not act in good faith but maliciously and under pressure from the railway company for the purpose and with the motive of preventing appellant from testifying as a witness against the railway company in damage suits against it, and to punish him for having done so. Appellant contends that the writing of the Penniman letter could not in good faith be considered as a violation of his obligations or as lawful ground of expulsion, but that if it could be so considered it was incorporated in the charges and specifications not in good faith but merely as a pretext and subterfuge, and that the real ground of his expulsion was his having testified as a witness in court against the railway company, and having refused to promise that he would not do so in the future to the injury of the company.

All demurrers and exceptions having been overruled, and the evidence heard, the court instructed a verdict for the defendants. The question presented is, would the evidence, under the allegations of the petition, have authorized a verdict for the plaintiff?

It may be remarked *in limine,* that the courts are not disposed to interfere with the internal management and conduct of such organizations as the Brotherhood of Locomotive Engineers is shown to be. Its members become such voluntarily, and in doing so agree to submit to and abide by the laws of the organization, as embodied in its constitution and by-laws and other rules and regulations lawfully adopted thereunder, and to submit their rights to the judgment of the tribunals provided by the laws of the organization for the government of its members, under the forms of procedure provided.

This is true without regard to the fact that the organization is incorporated. "By uniting with the society the member assents to and accepts the constitution and impliedly binds himself to abide by the decision of such boards as that instrument may provide for the determination of disputes arising within the organization. The decisions of those tribunals, when organized under the constitution and lawfully exercising their power, though they involve the expulsion of a member, are no more subject to collateral attack *for mere error,* than are the judgment of a court of law." (Screwmen, etc., Association v. Benson, 76 Texas, 555; 1 Bacon on Ben. Soc., sec. 102.)

This doctrine, however, has this important qualification which is as

clearly settled as the general rule, that the society "must confine itself to the powers vested in it, and in good faith pursue the matters prescribed by its laws, such laws not being in violation of the laws of the land, or any inalienable right of the member." (Otto v. Journeymen Tailors Union, 75 Cal., 308.)

It is claimed by appellees that appellant's expulsion was authorized by section 1, article 5, of the Constitution of Subordinate Divisions, which is as follows: "Should it become known to any member of this Brotherhood that a member thereof has been guilty of any unbecoming or disgraceful conduct, or of drunkenness, or of having in any way violated any law or regulation of the order, it shall be his duty to at once bring charges in writing against such member before the subdivision to which said offending member belongs, except in cases as per section 4, article 5, of Constitution of Subdivisions." And also for the reason that he had violated the terms of his oath or obligation, that he would not "sign any paper or document of any sort whatsoever calculated to injure our organization."

The charges and specifications against appellant and the report of the committee thereon have been heretofore given in full.

Appellant admits having signed the Penniman letter, which is as follows:

"Tyler, Texas, July 24, 1902.

"Mrs. A. H. Penniman, Chester, Ark.

"Dear Madame: The Cotton Belt Company can not defeat your claim against them for killing your husband, and any honest man who knows how he was killed will tell you so, but the company will do all they can to settle with you for less than you will get if you will sue them. There was a head end collision about a year and a half ago on the Cotton Belt near Trinidad which killed Mr. Emmerson; the engineer of one train, and crippled Mr. Kelton, the engineer of the other train. The agent of the company got around Mrs Emmerson and settled with her for $5,000. But Mr. Kelton sued them and got from the company something over $14,000 in money and had about $10,000 after paying his lawyers.

Your husband was 10 years younger than Mr. Kelton, and was earning more money, and this gives you a right to more than Mr. Kelton received. You can get a good lawyer for a third of what is collected. We want to see you treated right, and we ask you by all means not to let the company settle with you for a cent less than $10,000 until you have had a talk with a good lawyer who knows the Texas laws and who knows about how your husband come to be killed.

In 10 years your husband would have earned $18,000 at the rate of pay he was getting, and he would have been then only 45 years of age, and would still have had many years of good service in him. So we feel certain you can get $20,000 from the company, and will only have to pay one-third of it to a lawyer if you will only stand firm and not be persuaded to give away your rights.

You can easily find out who we are from any of your friends here in Tyler, and if you should want to talk to us we will gladly call to see

you.    We are not working for the Cotton Belt Company, and we are free to advise you honestly, without fear or hope of reward.

Respectfully,

J. W. Nichols,
W. Z. Thompson,
Members of Div. 201."

This letter was written by Nichols and signed by Thompson at his request.

Appellant seeks to justify himself in signing it by the following provision of the by-laws: "Sec. 2.    The widow of any deceased brother shall be assisted in every way and manner which may be deemed proper, and it shall be the duty of every individual member of the division to use every effort consistent with the rules of propriety to prevent her from coming to destitution or disgrace; and they shall treat her with respect and consideration so long as she may prove herself worthy."

We are not prepared to say that if the members of Division 201 in good faith and in the exercise of their honest judgment determined that the signing of this letter, under the circumstances, was unbecoming conduct or a violation by appellant of his obligation, and sufficient ground for expulsion, they would not have been authorized under the constitution and by-laws of the order to so determine.    A good deal of latitude must necessarily, and should be, allowed the members in determining questions such as these, and courts will not interfere, if they act in good faith.    The evidence shows that the appellant was barely acquainted with Penniman, and was not in fact acquainted with his widow, and that she had not solicited his advice or assistance in any way.    Considering the relations existing between the Brotherhood and the railway company it would probably not be an unreasonable construction of the by-laws and the terms of the obligation of a member, that they prohibited such an act as unbecoming conduct and as tending to injure the Brotherhood. Whether this action of the local subdivision, insofar as it was based upon the signing of the Penniman letter alone, was authorized, would depend upon whether its members in good faith, and in the exercise of their honest judgment, expelled appellant for this cause.    The evidence introduced by appellant sufficiently raised this issue, which should have been submitted to the jury.

The second specification under the charge presented against appellant is based upon his action in "going upon the witness stand in the Bolton case and testifying against the Cotton Belt Railway *to the injury of other brothers,* and causing the Brotherhood at large to lose prestige with the Cotton Belt Railway."

It is not to be supposed that if the action of the members of the subdivision in expelling appellant was based upon this charge alone it would be defended in any court, or that it would be contended that under any permissible latitude of discretion or authority, the members of the local subdivision would have been authorized, under any plea of good faith, to have placed such a construction upon the terms of the by-laws, as that under which they claim to have acted, so far as this specification of the charge is concerned.

It can not be assumed that appellant in joining the Brotherhood, and

in assenting to all of the provisions of its constitution and laws, could ever have supposed or anticipated that a construction so at war with the laws of the land, with his duties as a citizen and a member of society, and involving such an abnegation of his inalienable rights as such, would be adopted, as would punish him for doing that which the law and his duty as a citizen required him to do. The charge is not that he testified untruthfully, but that he went upon the stand as a witness and testified against the railway company.

What does it matter that his testimony, if truthful, was "to the injury of other brothers and causing the Brotherhood at large to lose prestige with the Cotton Belt Railway?" The evidence shows, and it does not appear to be disputed, that appellant's offense consisted in testifying, in obedience to a subpoena, in the case of one Bolton against the St. Louis Southwestern Railway Company of Texas, his testimony being as to the distance within which a train could be stopped by the use of air brakes under certain conditions. Examined as an expert, as to which he appears by reason of his knowledge and experience to have been qualified, appellant testified as to his opinion in the matter, at the instance of the plaintiff in said suit.

It will not be denied that it was his duty to obey the subpoena, and having done so, and been sworn, it was his duty, a duty which he could, and doubtless would, have been compelled to perform if he had not chosen to do so voluntarily, to answer truthfully all proper questions propounded to him, and the giving his opinion as an expert is no exception to this rule.

The provision of the constitution, authorizing subdivisions of the Brotherhood to expel members for unbecoming conduct is not unreasonable, on the contrary is just and proper, but if there be written into it the construction which declared the act with which appellant was charged in the second specification of the charge against him, to be unbecoming conduct and ground for expulsion, there would be no hesitation in declaring it unreasonable, unlawful and void. (See authorities collected in notes to sections 85, 86, 1 Bacon Ben. Soc.)

Appellees in the brief of their counsel do not undertake to defend their action in the expulsion of appellant on this ground, but base such defense entirely upon the writing of the Penniman letter, and it is noticeable that notwithstanding the grand chief engineer, Arthur, was fully informed of the charges and specifications, and of all of the proceedings of the local subdivision, in overruling appellant's appeal he justifies the action of the division upon the sole ground of the signing of the Penniman letter, and makes no reference to the other charges, indicating a consciousness that the expulsion could not be sustained or excused on this ground.

It is charged by appellant that in expelling him the members of the division acted maliciously and with intent to injure him, and as showing that they acted maliciously and not in good faith, evidence was introduced tending to show that the charge of signing the Penniman letter was a subterfuge and a pretext, that there was no disposition on the part of the members to expel him on this ground, and that he would not have been expelled at all for this reason. This evidence shows that it was proposed to appellant that if he would promise to keep off of the

witness stand and quit testifying against the railway company he would not be expelled, and that it was only upon his refusal to so promise, but agreeing that he would, when called upon, tell the truth, which was characterized by one of the members as "not sufficient," that it was determined to expel him. The uncontradicted testimony supports this contention of appellant; notably the letter of J. J. Bartholomew to the officers and members of Division 201, dated November 15, 1902, and his letter to Arthur, grand chief engineer; the testimony of McCool, one of the defendants, "that he named the proposition to Thompson that if he had promised then and there that he would not go on the witness stand against the company as an expert witness, that he would not have voted to expel him;" the fact that Nichols, who wrote the Penniman letter and got Thompson to sign it, and who was also under charges for doing so, made the required promise and got off with suspension for three months.

If it be true that the expulsion of appellant was solely upon the ground set out in the second specification, and that the prosecution for writing the Penniman letter was merely for the purpose of affording a color or pretext for the expulsion, then it could not be said that the members acted in good faith and from proper motives in expelling him. (Cranfill v. Hayden, 80 S. W. Rep., 613; Otto v. Tailor's Union, 75 Cal., 308.)

The case of Otto v. Tailor's Union, *supra*, is exactly in point. Otto was expelled from the union for the offense of working for a person against whom a strike had been declared. The laws of the union did not authorize expulsion for this cause, the punishment being only a fine. The strike having been declared off, Otto was reinstated and immediately charges were preferred against him for conspiracy to the injury of the society, upon which charge he was tried and expelled. He sued in mandamus to compel his reinstatement. The court found that while the laws of the order authorized his expulsion for the offense of conspiracy, this charge was a mere pretext, his expulsion being, in fact, for the same offense for which he had been formerly wrongfully expelled. The court says: "These facts raise the inevitable conclusion that the trial and conviction of plaintiff was a travesty upon justice and lacking in the essential elements of fairness, good faith, and candor, which should characterize the actions of men in passing upon the rights of their fellowmen."

To make such conduct actionable it is not necessary that malice in the sense of hatred or ill will on the part of the defendants towards appellant should be shown. Malice in such case would be sufficiently shown if it was proven that they acted knowingly and wilfully in violation of the rights of appellant, and to his injury. An old definition of malice will do very well here: "It means a wrongful act done intentionally without just cause or excuse." (19 Am. and Eng. Ency. of Law, 623.)

The issue presented by the pleading and evidence as to whether the writing of the Penniman letter could be reasonably considered a violation of appellant's obligation or the laws of the Brotherhood and whether the members of Division 201 in good faith so considered it, and if so, whether appellant was expelled, not on that ground, but solely for the

reasons and upon the grounds set out in the second specification to the charge, should have been submitted to the jury. If either issue be decided in favor of appellant he would be entitled to recover.

The proposition is supported by authority, that the Grand International Brotherhood would be responsible of the acts of the local division as its agent. (Mitchell v. Leech, 66 Law Rep. Ann., 722; Knights of Columbus v. Fuqua, 60 S. W. Rep., 1020.)

If however, there be any doubt as to this there can be none that it is made libel, if any wrong has been committed, by the act of its supreme officer, Grand Chief Engineer Arthur, who acted with full notice of the wrongful action of the subordinate division, or at least with notice of such facts as would have put him upon inquiry as to the fact that appellant had been really expelled upon the ground that he had testified against the railway company. This notice was given to Arthur by appellant's letter to him, in connection with the charges, the report of the committee, and proceedings of the division, and the letter of J. J. Bartholomew to the officers and members of Division 201, of November 15, 1902, which was sent to him, with the other papers.

There was sufficient evidence to raise the issue as to the liability of the St. Louis Southwestern Railway Company on the grounds charged in the petition and this issue should have been submitted to the jury. (3 Green Ev., sec. 93; Cranfill v. Hayden, 22 Texas Civ. App., 656.)

Appellant was not required to exhaust his remedies within the order to correct the wrongful action of the local division, before bringing this suit for damages. It was held by the Supreme Court in Benson v. Screwmen Benefit Association (76 Texas, 552) that such a course was necessary before resorting to the extraordinary remedy of mandamus to compel reinstatement, and for obvious reasons pertaining to the nature of that extraordinary remedy. In that case, however, which was a suit for damages as well as mandamus, the court especially limited its decision to that part of the petition which sought a mandamus. Upon a second appeal to this court in which the opinion of the court was by Justice Williams, it was expressly held that the remedy for damages could be prosecuted without having resorted to the appeal within the order. (Benson v. Screwmen's Ben. Assn., 21 S. W. Rep., 562.) We are content to follow this opinion which appears to us to be sound.

Reinstatement in the order as a result either of an appeal to the next meeting of the Grand International District Convention, or failing that, by a writ of mandamus, would not have afforded appellant full redress for the injury to his property rights and other damages suffered on account of his expulsion from the Brotherhood.

So far as concerns the publication in the Brotherhood Journal of the expulsion of appellant for unbecoming conduct and violation of his obligation, the liability of defendants therefor hangs upon their liability for the consequences of the expulsion of appellant from the Brotherhood. The constitution of the order required this publication to be made, not by any outside agency, but by and in a journal published by the Brotherhood and a part of its machinery for conducting its business. Such publication was as inevitable a result of the expulsion as was the loss of the insurance policy, the traveling card or the sick benefits. If defendants are liable for the consequences of such ex-

pulsion, they would be liable for the results of this publication. If the expulsion was wrongful, the publication of such expulsion by the same agency by which the expulsion was effected was likewise, and to the same extent, wrongful. Whatever motive actuated defendants in the expulsion must be held to have actuated them in the publication which was in fact part and parcel of the sentence of expulsion.

The evidence offered by appellant for the purpose of showing the value of the insurance policy, of the traveling card and of the sick benefits was relevant and material on the issue as to the amount of his damages, and it was error to exclude it.

We do not think that evidence as to the amount of his earnings per month while employed as a locomotive engineer, was relevant to this issue. Appellant had not been so employed for nearly two years. It does not appear that he contemplated again seeking employment as such. The damages are too remote.

The court erred in sustaining appellees' objections to the question propounded by appellant to the witness R. J. McCool as to what Nichols promised and the answer of the witness thereto. This testimony was material and relevant upon the issue of the wrongfulness and improper motive of defendants in expelling appellant as heretofore indicated in this opinion. Nichols was certainly as guilty as appellant in the matter of writing the Penniman letter, and if appellant refused to promise not to testify against the railway company and was thereupon expelled, and Nichols, charged with the same offense, made the required promise and was not expelled, this fact would tend to show that the signing of the Penniman letter was not the real ground of appellant's expulsion.

For the same reason there was error in excluding the testimony of M. M. Bartholomew as to the action taken against J. A. Kelton and his expulsion upon his refusal to promise not to go on the witness stand against the railway company.

The question of appellant's counsel to the same witness as to Nichols working up testimony against the railway company was not relevant and was properly excluded on objection of appellees.

It is to be gathered from the bill of exceptions taken by appellant to the exclusion of his testimony as to his monthly earnings as a locomotive engineer that the court took the view that the Brotherhood of Locomotive Engineers being a mutual benefit association appellant could not recover damages, but that his only remedy was mandamus to compel reinstatement. The objection to the testimony by counsel for appellees, however, was not placed upon that ground and, as has been stated, was properly sustained. It appears conclusively that appellant's membership in the Brotherhood had a direct pecuniary value. In addition to this fact, if his testimony be true (and he had the right to have the jury pass upon this) the damaging results of the publication of his expulsion and of the expulsion itself could not have been adequately remedied by such reinstatement. In their brief counsel for the railway company cite the cases of Peyre v. Mutual Relief Society, 27 Pac. Rep., 191, and Lavalle v. Society, 24 Atl. Rep., 467. The Peyre case can hardly be said to sustain the proposition. The court held that the demurrer to the petition was properly sustained on the ground that the facts alleged did not entitle plaintiff to recover damages of defendants, and this

quite irrespective of the question as to whether he should have sought reinstatement by mandamus as his only remedy, which question is not in fact directly decided at all. The question is directly presented and decided in the Lavalle case cited by appellees, the court holding in accordance with appellees' contention. In its opinion, however, the court says that "the question can not yet be regarded as settled by authority," and the only case cited in support of the court's conclusion is the Peyre case, *supra.*

The question was directly decided to the contrary by this court in Benson v. Screwmen's Ben. Assn. (21 S. W. Rep., 562), and this seems to have been the view taken by the Supreme Court in the same case. (76 Texas, 552.)

The court properly held that the plaintiff's petition stated a good cause of action, which ruling is not complained of by appellees.

The demurrers should have been sustained if they are correct in the proposition contended for, that appellant's only remedy was by mandamus.

Under the allegations of the petition there was sufficient evidence to raise the issue of liability of all of the defendants, which should have been submitted to the jury, under appropriate instructions.

For the errors indicated in this opinion the judgment is reversed and the cause remanded.

*Reversed and remanded.*