## McCANTZ v. BROTHERHOOD OF PAINTERS, DECORATORS AND PAPERHANGERS OF AMERICA. (No. 1770.)

Court of Civil Appeals of Texas. Beaumont. Jan. 29, 1929.

Clarence A. Miller, of Houston, for appellant.

Ewing Werlein and A. C. Winborn, both of Houston, for appellee.

WALKER, J. This suit was brought by appellant, J. J. McCantz, against appellee, the Brotherhood of Painters, Decorators and Paperhangers of America, a corporation domiciled in the state of Indiana, for damages suffered by him on account of the refusal of one of its subordinate unions to accept payment of his regular dues maturing on the 1st of April, 1925, "thus withdrawing from plaintiff and causing plaintiff to lose his standing as a union man and the benefits belonging to him and enjoyed by him as a union man as a member of said Local No. 1069 and to lose in addition the rights which belonged to him as a member of said Local No. 1069 for disability and death benefits provided for members by the Constitution and Rules under which defendant including its subordinate bodies such as District Councils and Local Unions were being operated and were doing business on March 31, 1925." Appellant prayed for actual damages in the sum of $1,900, as follows: $200 death benefit for himself, $50 for his wife, loss of time because of his loss of standing as a union man, $600 in one count and $900 in another count, and for loss in compensation for the difference between union and nonunion wages, totaling $1,900, and for $1,000 exemplary damages, alleging that appellee's conduct was prompted by malice. Appellee's defense was certain provisions of its charter, reflected by the statement to be hereafter made. This appeal is from a verdict instructed in favor of appellee.

Appellee is a corporation organized for the following purposes: "1. The aiding of members to become more skillful and efficient workers. 2. The promotion of their general intelligence. 3. The elevation of their character. 4. The regulation of wages, hours and conditions of labor. 5. The cultivation of friendship among the members of the association and the rendering of assistance in securing employment. 6. The promotion of their individual rights in the prosecution of their trade or trades. 7. The raising of funds for the benefit of sick, disabled or unemployed members, and the families of deceased members who continuously complied with our laws. 8. And such other objects, for which working people may lawfully combine having in view their mutual protection and benefit."

Appellee's charter provided for the organization of local unions in any part of the United States, with authority to work, operate, and transact all business within their

charter provisions. These local unions and their executive officers were agents of appellee. In cities having more than one local union, appellee's charter provided for the organization of district councils. In the city of Houston, appellant's home, there were two local unions, to wit, Local Union No. 130, organized on or about August 11, 1922, and Local Union No. 1069, organized on or about December 15, 1923. District Council No. 15, having jurisdiction over these two local unions, was organized in April, 1924. The by-laws, constitution, and charter of appellee and of these local unions prescribe certain obligations for their members and penalties for their violation. It was against these rules for any member to work for an employer who might be designated by them as unfair to union labor. The by-laws and constitution prescribed an elaborate and efficient trial and appellate procedure, providing for the filing of charges, giving notice to the defendant member, selecting trial committees, the reports of the committee, balloting on the reports, and the necessary steps to appeal from a conviction of a subordinate union to the highest executive body of appellee. Section 294 of appellee's constitution, a part of its trial procedure, authorizes punishment for contempt, and is as follows: "If the accused wilfully neglects or refuses to stand trial, the committee shall find him guilty of contempt and he shall be punished as the local union or district council may determine."

Section 292, in part, is as follows: "If the report and the decision of the committee are accepted or amended by the local union or district council the accused shall be summoned to appear at the next regular meeting and be sentenced by the President in accordance with the law or laws governing same."

It was further provided that all charges against a member should be in writing, specifying the section of the constitution or by-laws violated and the manner of violation. On and prior to May 24, 1923, appellant was a member in good standing of Local Union 130. On that date this union directed its secretary to prefer charges against appellant, the following notation being from its minutes: "The instance of a Bro. member now employed in the S. P. shops; Mot. made and carried that the Rec. Secy. prefer charges against Bro. John McCann."

Appellant was served with notice of this charge, but failed to appear. However, a trial committee was appointed, and after hearing evidence made due report of its findings. This report came on for hearing before Local Union No. 130 on June 21, 1923, whereupon the following proceedings were had, as shown by the minutes of that meeting: "The report of the trial committee as having tried Bro. J. J. McCants was read; Mot. made

and carried to accept the report. Mot. made and sec. that the S. P. shops be placed on the fair list. After considerable argument a Mot. made and carried to table the Motion. Motion then made and carried to reconsider the acceptance of the report of the trial committee; this motion carried unanimous. Mot. made and carried that the trial committee be discharged and a new one appointed. Naming of the trial committee proceeded; ten names were made note of; Bro. Goodman was appointed by the President to strike off three names; they were Gray, Baiers and Gabriel. The remaining names were placed in the hat and drawn out as follows: Sherber, Arbing, V. L. Hughes, Forth and Chandler. The trial committee requests that a new set of charges be made out and that the defendant be notified to appear for trial next Thur. at 7:30 P. M." At the regular meeting July 5th, quoting from the minutes: "The action of the trial committee for J. J. McCantz was postponed."

On July 12, 1923, as appellant had refused to obey the summons to trial, he was, on due motion, fined $25 for contempt, of which he was given due notice. On July 19, 1923, appellant made his appearance for trial, and the contempt fine was remitted. On that date the old trial committee was discharged and a new one selected, which proceeded to try appellant upon the charges filed against him. After hearing the evidence, the committee made its report, which report was accepted, as shown by the following excerpt from the minutes of that meeting: "The trial committee returns and submits their report; the defendant asks that same be read; they ask that J. J. McCants resign his position at the S. P. Shops at once; the defendant volunteers that he will not do so. Mot. made and carried that the report of the trial committee be accepted and the Committee discharged."

In explanation of this last committee report, a member of the committee testified that the report was that appellant should be exonerated on condition that he resign from his employment with the S. P., and that appellant immediately left the hall when the vote acquitting him was taken. After he left, the union decided to take no further action at that time and to postpone action, thinking that he would return to the hall. On the theory that he might return, on the testimony of this witness, nothing further was done in the case until the following proceedings were had on August 9th: "The J. J. McCants case is considered unfinished; Mot. made and carried to reconsider the request of the trial committee, as rendered by them. Mot. made and carried that he be fined $50.00 under sections 275–295 of the general Constitution and that the fine be not remitted."

Prior to the entry of this order, appellant had not appeared at Local Union 130 since his acquittal on July 19th. He was not

·notified to appear. He was not notified that his case was still considered pending business. He was not notified that a motion would be made or had been ·made to reconsider the report of the committee as made on July 19th. But notwithstanding he was without notice, as affirmatively appears from the ·minutes of Local Union 130, and was under no summons to appear for trial, the vote of acquittal was reconsidered, and he was fined $50 for contempt, in violation of the constitution and by-laws of appellee and of Local Union 130. While the minutes show he was fined "under sections 275–295," the fine could have no basis except under section 294, supra. He was not notified of the fine against him, and knew nothing of the fine until long afterwards. After leaving the hall on the evening of July 19th, appellant did not visit Local Union 130 any more, but on February 19, 1924, made application to join Local Union No. 1069, saying in his application that he had been a member of Local Union No. 130, and that he had never been fined in any local union for violating the trade rules or constitution. In explanation of these answers, he testified that when he made his application he did not know that he had been fined by Local Union 130. By his application he expressly subscribed to, accepted, and agreed to the constitution of appellee and to all amendments thereafter made and to all by-laws enacted thereunder, and acknowledged that he was informed of the contents and provisions of said constitution, amendments, and by-laws. He further agreed "to abide ·by the provisions of the constitution, including such amendments as may be hereafter adopted, and by the by-laws of the local union, district councils, or other subordinate bodies" within whose jurisdiction he might be. He was received upon this application and duly obligated and paid his dues in full up to April 1, 1925. After he had joined ·Local Union 1069, Local Union No. 130 made complaint against him that he had failed and ¡refused to pay the fine, as above set out. ·Much correspondence was had between the ·local unions and appellee's headquarters in Indiana, culminating in a visit from one of .appellee's vice presidents to Houston to adjust the matter. This vice president, with full authority from appellee to act in the premises, went to Houston, conferred with the two local unions and with appellant, and with all the facts before him demanded of appellant that he pay the fine, which appellant refused to do. Thereupon he instructed the officer in charge of collecting dues to receive no more dues from appellant, which order Local Union 1069 faithfully carried out, ,as it was obligated by appellee's· by-laws to do. The evidence offered by appellant raised the issue that the damages suffered by him ·proximately resulted from the orders of appellee's agent to Local Union No. 1069 sus-

pending appellant from its membership and denying him the right to work as a union laborer. Appellee has filed no brief.

### Opinion.

We believe the judgment was erroneously instructed. It is the general rule that the courts will not interfere with beneficial associations by directing or controlling them as to questions of internal policy, except to protect pecuniary or property rights of their members. 7 C. J. 1116; Manning v. San Antonio Club, 63 Tex. 166, 51 Am. Rep. 639; Lone Star Lodge v. Cole, 62 Tex. ·Civ. App. 500, 131 S. W. 1180; Gaines v. Farmer, 55 Tex. Civ. App. 601, 119 S. W. 874; Thompson v. Grand International Brotherhood, 41 Tex. Civ. App. 176, 91 S. W. 834. In this case the damages suffered by appellant have been defined by the courts to be property rights, and therefore within the jurisdiction of the civil courts. St. Louis S. W. R. Co. of Texas v. Thompson, 102 Tex. 89, 113 S. W. 144, 19 Ann. Cas. 1250; same case by Court Civil Appeals 108 S. W. 453; same case on former appeal Thompson v. Grand International Brotherhood, supra; Froelich v. Musicians Mutual Benefit Ass'n, 93 Mo. App. 383; Gray v. Chapter-General, etc., 70 App. Div. 155, 75 N. Y. S. 267; Dingwall v. Street Railway, etc., 4 Cal. App. 565, 88 P. 597; Lysaght v. St. Louis Operative, etc., 55 Mo. App. 538; Lahiff v. St. Joseph's, etc., 76 Conn. 648, 57 A. 692, 65 L. R. A.·92, 100 Am. St. Rep. 1012.

· It is also a general rule that, where the constitution and by-laws provide a tribunal to entertain appeals from the rulings and judgments of the inferior associations or ·lodges, such remedies must be exhausted by an aggrieved member before asking relief of the civil courts. Screwmen's Beneficial Ass'n v. Benson, 76 Tex. 552, 13 S. W. 379; Lone Star Lodge v. Cole, supra; · 7 C. J. 1121. However, there are certain well-recognized exceptions to this general rule, one of which is thus stated by the Supreme Court of this state in St. Louis S. W. R. Co. of Texas v. Thompson, supra: "It is contended that the plaintiff could not maintain this action because he did not appeal from the decision of P. M. Arthur, Grand Chief Engineer, to the Grand International Division, but this is not a proceeding to restore him to his membership. It is a suit for damages occasioned by his expulsion, .and one in which his property rights, as well as personal rights, are involved. We are of opinion that it was not necessary for him to have prosecuted his appeal further than he did before instituting his suit for damages. Benson v. Screwmen's Ben. Ass'n, 2 Tex. Civ. App. 66, 21 S. W. 562; Bauer v. Sampson [Samson] Lodge K. P., 102 Ind. 262, 1 N. E. 571. On application for mandamus to restore plaintiff to membership, the court would not take jurisdic-

tion until the applicant had exhausted his remedies under the laws of the Brotherhood. The same reason does not apply in a suit for damages. The right to apply to the courts for redress of such injuries as in this case exists in favor of all citizens, and could not be abridged by any association except by the consent of the member. The defendants have no ground upon which to stand in demanding that the remedy of appeal should be exhausted before they are called upon to repair the injury they have inflicted upon Thompson. The continuance of his membership in the Brotherhood does not concern the defendants."

In that case Thompson's right to appeal to the civil courts was sustained against an affirmative showing that he did not resort to the tribunals prescribed by the Grand International, etc. Applying these principles to the facts of this case, it is our conclusion that appellant was not required to resort to the tribunals provided by the constitution and by-laws of appellee in order to sue for damages suffered by him by reason of his exclusion from membership in Local Union 1069. He had the right to pursue his remedy immediately in the civil courts, as he did. Appellee's defense against the wrongs charged by appellant was to show that he had been rightfully excluded from his membership. To sustain this defense, it offered the old fine against appellant in Local Union No. 130. If that fine was legal, then appellant was rightfully excluded and he has no complaint. If the judgment assessing the fine against him was merely voidable, he has no complaint, because he failed to appeal from that order as provided by the constitution and by-laws to which he had assented in becoming a member, and the judgment having become final was not subject to the collateral attack made thereon by appellant in this case. Appellant's only defense against that judgment was to show that it was absolutely void. Quoting again from 7 C. J. on page 1117, we find the following rule: "The courts will interfere in order to see that the association confines itself to the powers vested in it."

This rule has support in Thompson v. Grand International, etc., supra. Quoting again from the same authority, page 1122, members are not required to appeal from an order, judgment, or decree of a local union or society "where the society itself has violated its own regulations, so as arbitrarily to invade the rights of members, as where it has failed to notify the aggrieved member of the proceeding affecting his rights." The facts bring this case within the foregoing principles and render void the $50 fine. On July 19th, the trial committee submitted its report recommending that appellant be acquitted on condition he would resign his employment at the S. P. shops. When this report was submitted, to quote the minutes, "the defendant volunteers that he will not do so." Notwithstanding that statement by appellant, motion was duly made and accepted that the report of the committee be received and the committee discharged. Appellant then left the hall, as he testified, believing that he had been acquitted and that no other charges were pending against him. He had no notice that Local Union No. 130 had reconsidered its report or would reconsider its report. He was not summoned to appear for a new trial. These facts appear affirmatively from minutes Local Union No. 130. Therefore, we think it clear that Local Union No. 130 was without jurisdiction to fine him for contempt under the provisions of section 294, quoted supra, or enter any fine against him. The fine was absolutely void. Ex parte Ratliff (Tex. Sup.) 3 S.W.(2d) 406, 57 A. L. R. 541

If we are correct in our conclusion that the judgment assessing this fine was absolutely void, then it can afford no justification to the acts of appellee in instructing its local union No. 1069 to exclude appellant from membership and is liable for all actual damages suffered by him. On the evidence before us, we think appellant has presented no case for punitive damages.

The judgment of the lower court on the issue of punitive damages is affirmed, but reversed and remanded for a new trial on the issue of actual damages.