THE FARMERS MUTUAL HAIL INSURANCE ASSOCIATION OF
IOWA, Appellant, v. PATRICK SLATTERY.

Changes in By-laws: ACQUIESCENCE OF INSURED. Where the by-laws of a mutual hail insurance association at the time of the issuance of insured's policy made no provision for the suspension of policies for the failure to meet assessments, but before insured's loss were amended so as to provide for such suspension, and three notices of a delinquent assessment were sent insured, each containing a copy of the amended by-law, but none of them mentioning the suspension of his policy, his remaining silent under the circumstances did not indicate acquiesence in the change, especially as it did not affect the obligation of the association to him.

ENACTING SUSPENSION: *Not binding on insured.* Where the by-laws of a mutual hail insurance association at the time of the issuance of insured's policy made no provision for the suspension of policies for the failure to meet assessments, insured was not bound by a subsequent amendment thereof providing for such suspension though he agreed to be governed by the articles of incorporation and by-laws, the former of which expressly conferred power to enact by-laws on the directors. While such change is binding as to benefits derived from mere membership, this is not so of an independent contract made with the association.

ARTICLES OF INCORPORATION AND BY-LAWS: *Are part of insurance contract.* The articles of incorporation and by-laws in mutual associations entered into and become part of the contract with each member.

INTENTION TO MAKE BY-LAWS: *Notice of unnecessary.* Notice in advance to each member of a mutual association of the intention of the board to exercise the power expressly conferred on the board by the articles of incorporation to enact by-laws is unnecessary.

*Appeal from Clay District Court.*—HON. F. H. HELSELL,
Judge.

TUESDAY, JANUARY 28, 1902.

THE plaintiff is a mutual insurance association, having for its object the insurance of growing crops against loss or damage by hail. Any one having property insured thereby is a member, and is entitled to one vote at the annual meeting for the election of directors on the first Wednesday of January each year. The management is in charge of nine directors, and upon them is conferred the express authority "to enact by-laws, regulations, and rules, levy and collect assessments to pay losses and expenses, and to perform all other acts for the efficient management and working of the association." On the 16th day of June, 1896, it issued to defendant a policy, on the back of which were printed the articles of incorporation and by-laws, covering injury to his crops by hail for five years, and based on an application containing this clause: "I agree to pay all just assessments, and to be governed by the articles of incorporation and by-laws of the association. In case it becomes necessary to collect an assessment by law, I agree to pay a reasonable attórney's fee. Patrick Slattery, Applicant. Dated June 6, 1896." At that time section 12 of the by-laws read: "When an assessment is made, the secretary shall immediately notify by mail each member of his share of the assessment, giving a list of the losses, and the names of parties sustaining the same; and the member shall, upon receipt of said notice, remit within thirty days to the secretary, or pay to the collector named in the notice, the amount of his assessment; and should he fail to do so the secretary shall give him second notice by registered letter, adding a penalty of twenty-five cents. If it becomes necessary to collect by suit, the member against whom such suit is commenced shall be liable for all costs and attorney's fees." October 5, 1896, the board of directors amended the above by-law by striking out the words by "registered letter" in the eight and ninth lines of said by-laws as printed on said policy, and also by inserting after the word "cents" in the ninth line of said by-laws, as

printed on said policy, the words: "If any member fails to pay the assessment and penalty within sixty days after the date of the first notice, the secretary shall, by registered letter, demand of such delinquent member the assessment and penalty, together with the additional penalty of ten per cent., and it may by civil suit be collected by the secretary on behalf of the company, including both penalties and assessment; and members of this company whose assessments and penalties remain delinquent or unpaid after sixty days from the date of the first notice shall not be entitled to recover in case of loss during such delinquency." This action was approved at the annual meeting January 13, 1897, though without notice to the defendant, and he has never assented thereto. October 14, 1897, the board of directors levied an assessment of 3 per cent. of the full value of all policies in force July 29, 1897, defendant's portion ($18) of which he had due notice November 1st following. He had been delinquent for the previous year, and paid a note executed for the assessment of 1896, November 29, 1897. On January 15, 1898, demand by written notice was made on defendant for the assessment. Again, on the 1st of March following, defendant was notified of the necessity of paying the assessment, with penalties. Each of the these notices was in accordance with the by-laws, and each included a copy of by-law 12 as amended. On June 30, July 13, and August 19, 1898, the defendant's crops were damaged by hail in the sum of $400, of which plaintiff was duly notified, and proofs of loss furnished. Suit was begun by the association for the assessment, with penalties, and by way of counterclaim the defendant demanded the indemnity of $400 for damages to crops. Both claims were allowed, judgment being rendered against plaintiff for the difference, and it appeals.—*Affirmed.*

*Thos. A. Cheshire* for appellant.

*Cory & Bemis* for appellee.

Ladd, C. J.—Under the by-laws as they were when defendant became a member of the association, there was no provision for the suspension of the policy for failure to pay an assessment duly levied. A penalty of 25 cents, merely, was imposed, and the assessment might be recovered by suit. Thereafter, and long before the loss, the twelfth by-law was amended by adding thereto, "Members of this company whose assessments and penalties remain delinquent or unpaid after 60 days from the date of the first notice shall not be entitled to recover in case of loss during such delinquency." An assessment to pay losses was levied in October, 1897, and three notices of it sent to the insured. Each of these included a copy of the by-law as amended, but in none was the suspension of the policy mentioned. As then forfeiture thereunder was not claimed, he could not be expected to object thereto; and remaining silent under the circumstances did not indicate acquiescence in the change, especially as it did not affect the obligation of the association to him.

II. The articles of incorporation and by-laws in mutual associations enter into and become part of the contract with each member. *Simeral v. Insurance Co.*, 18 Iowa, 319; *Walsh v. Insurance Co.*, 30 Iowa, 133; *Fitzgerald v. Association*, 106 Iowa, 457; *Fee v. Association*, 110 Iowa, 271. And here the promise of indemnity is predicated on an express promise by him to be governed by these articles and by-laws. The authority of the board of directors to enact by-laws is expressly conferred, and the contention that each member of the association must have had notice of the purpose of exercising this power in advance is utterly untenable. The suspension of the policy is not made to depend on notice to that effect, but upon the lapse of 60 days after the first notice of the assessment.

III.    The sole remaining question to be determined is whether the insured was bound by the change in the by-law made after. his policy was issued.    The case, as we think, is ruled by *Sieverts v. Association,* 95 Iowa, 710.    There the assessment was payable in 30 days after notice, but a delinquent might be reinstated upon payment within 15 days thereafter by adding a penalty of 25 cents. After the certificate was issued the by-laws were so changed as to add to the condition of reinstatement a requirement that the member then be in good health, and it was held that, as the contract had not so provided, the change in the by-laws could not have a retroactive operation.    There the change might have had the effect of forfeiting the contract; here, that of suspending it.    In principle both are alike.    The same doctrine is distinctly declared in *Hobbs v. Association,* 82 Iowa, 107.    See, also, *Carnes v. Association,* 106 Iowa, 281.    But appellant attempts to distinguish the case at bar from these in that the insured expressly agreed to be governed by the articles of incorporation and by-laws of the association, the former of which expressly conferred upon the board of directors the right to enact by-laws.    As already said, the articles and by-laws in force when the policy issued became a part of the contract, and the promise to be bound by them added nothing.    His contract was governed by them, regardless of such an agreement.    Nor .is it material that the articles empowered the directors to make by-laws. Without this that power was expressly conferred by the statute.    Section 1698, Code, is a substantial re-enactment of section 1129 of the Code of 1873, authorizing the direc-tors "to adopt such by-laws and regulations not inconsistent with law as should appear to them for the regulation and conduct of the business."    But without this statute the power to enact by-laws is generally recognized to be inherent in all corporations aggregate, including incorporated mutual associations.    Niblack, Mutual Benefit Society, section 16; 3 Am. & Eng. Enc. Law, 1060.    It was exercised in

both *Sieverts'* and *Hobbs' Cases,* and the right not questioned. Indeed, it must be presumed that parties, in becoming members of such associations, do so with the knowledge that the by-laws and even the articles of incorporation may be changed. *Supreme Lodge v. Knight,* 117 Ind. 489 (20 N. E. Rep. 479, 3 L. R. A. 409). This does not prevent them from contracting with reference to these as they exist at the time the agreement is made. There is nothing in the policy indicating that articles other than those in force when it was issued were to govern the rights of the parties. Though the association might amend its by-. laws, it was in reference to those in existence, and not to probable amendments, the promise of defendant had reference. Appellant relies on *Poultney v. Bachman,* 31 Hun, 49; *Stohr v. Society,* 82 Cal. 557 (22 Pac. Rep. 1125); and *Fugure v. Society,* 46 Vt. 362. But in each of these cases the benefits conferred depended solely on membership, and not on an independent contract with the association. As said, *Sieverts v. Association, supra,* is decisive. Contra, see, *Supreme Lodge v. Knight, supra.*—Affirmed.