The Grand Lodge of the Ancient Order of United Workmen of the State of Kansas v. Jane Haddock.

No. 14,267.  (82 Pac. 583.)

SYLLABUS BY THE COURT.

1. Insurance — *Fraternal — By-law — Saloon-keeper — Benefit Certificate.* The adoption by a fraternal-insurance order of a by-law declaring that no person shall be admitted or retained as a member who is engaged in the sale of intoxicating liquors does not, in the absence of a specific provision to that effect, avoid the beneficiary certificate of a member who is already engaged in that business in a state where it is not unlawful, who continues therein, and against whom no action is taken.

2. —— *By-law Annulling Saloon-keeper's Certificate Construed.* A by-law of such an order that provides that any member who shall, after the date of its adoption, have entered or who shall thereafter enter into the business of selling intoxicating liquors shall stand suspended from his rights to participate in the beneficiary fund, and that his certificate shall become void from the date of his so engaging in such occupation, does not in terms apply to the case of a member who, prior to that time, was engaged in such business and who remains in it continuously thereafter.

Error from Wyandotte district court; J. McCabe Moore, judge. Opinion filed October 7, 1905. Affirmed.

*J. B. Tomlinson*, and *Farrelly & Evans*, for plaintiff in error.

*Angevine & Cubbison*, for defendant in error.

The opinion of the court was delivered by

Mason, J.: The grand lodge of the Ancient Order of United Workmen of the state of Kansas, an insurance association, prosecutes error from a judgment rendered against it in favor of Jane Haddock upon a beneficiary certificate issued to her husband, John Haddock. The judgment must be affirmed unless the certificate was avoided under the rules of the order by the fact that John Haddock was a saloon-keeper. He became a member of the Workmen in 1880, being then engaged in the business of selling liquor in Kansas. At that time neither the laws of this state nor of the association forbade that occupation. After the enactment of the prohibitory law Haddock continued in the same business, but changed his location to Missouri, so that there is no claim that he was at any time a violator of the statute. He remained in the business until his death, in 1903.

In 1889 a by-law of the grand lodge was adopted providing, among other things, that "no person shall be admitted to membership or retained as a member in this jurisdiction . . . who is engaged in any way in the sale of intoxicating liquors as a beverage." The by-law was silent as to how this requirement should be enforced, except for a further declaration that any lodge offending against any of the provisions of the section in which it was found should be deprived of its charter. On August 1, 1898, the supreme lodge of the order adopted a law reading as follows:

"Any member of the order who shall, after August 1, 1898, have entered or who shall hereafter enter

United Workmen v. Haddock.

into the business or occupation of selling by retail intoxicating liquors as a beverage, shall stand suspended from any and all rights to participate in the beneficiary fund of the order, and his beneficiary certificate shall become null and void from and after the date of so engaging in said occupation, and no action of the lodge of which he is a member, or of the grand lodge or any officer thereof, shall be necessary or a condition precedent to any such suspension. In case any assessments shall be received from a member who has thus engaged in such occupation after August 1, 1898, the receipt thereof shall not continue the beneficiary certificate of such member in force, nor shall it be a waiver of his so engaging in such occupation."

After the adoption of this law Haddock maintained his relations with the order and continued to pay his assessments regularly. They were received by the officers of the local lodge with knowledge of the facts regarding his occupation, and were by them forwarded to the proper officers of the grand lodge. All payments made after that time, however, have been tendered back to Mrs. Haddock since her husband's death. The questions involved are: (1) Whether the terms of the by-laws referred to preclude a recovery upon the certificate; (2) if so, whether it was competent for the order to adopt them as against Haddock; (3) whether the grand lodge was estopped to invoke the benefit of these by-laws in this case. Owing to the conclusion we reach regarding the first question it will be unnecessary to consider the others.

It is sufficiently clear that the by-law adopted in 1889 did not affect Haddock's standing in the lodge or the rights of the beneficiary under the certificate. While it forbade the acceptance or retention as members of the lodge of persons engaged in the business of selling liquor, it did not profess to be self-operating; it provided no machinery by which it could be enforced, and no effort was in fact ever made under it to terminate Haddock's membership. A very similar question was discussed in *Steinert v. United Brother-*

*hood of Carpenters & Joiners of America,* 91 Minn. 189, 97 N. W. 668, where it was said:

"The constitution provided that 'no person who engages in the sale of intoxicating drinks can be admitted or retained as a member.' . . . The question is: Must charges be preferred and an opportunity to defend given to an accused member before his membership ceases, or does the act of selling intoxicating drinks terminate the membership without any further proceedings? That Steinert disregarded the laws of the order stands admitted, but it does not follow that this fact of itself ended all liability of the defendant on his certificate of membership, issued when he was eligible, under which he had good standing, and in which he had acquired a property right. This depends entirely on the contract of membership, of which the constitution was a part. It was expressly provided in the certificate that a member must strictly adhere to his obligation, and obey the constitution and all rules of the union based thereon. No person who engages in the sale of intoxicating drinks can be 'retained' as a member. Provisions of this kind, which may deprive one of property rights acquired when paying dues from time to time, are to be construed strictly, for forfeitures are not favored in the law. A member should not be deprived of benefits arising out of his certificate of membership unless a construction of the constitution makes such a result absolutely necessary. We do not regard these constitutional provisions, taken as a whole, as indicating an intent to make the one above quoted self-executing or operative. It would have been very easy for the association, which undoubtedly prepared its own constitution, if such had been the intent, to have provided explicitly that in case a member engaged in the sale of intoxicating drinks his membership should forthwith and immediately cease, his certificate should stand canceled, and that he should have no further rights under it."

A more difficult question is whether the law adopted in 1898 is to be interpreted as intended to affect the status of one who, like Haddock, having already engaged in the business of selling liquor, continued such occupation after that time without interruption. Con-

strued literally, it has no application to such a case. Haddock did not *enter into* the forbidden occupation after August 1, 1898. He entered into it long before that time, and remained in it continuously. To make the expressions used apply to one in his situation, it would be necessary to give them a very liberal, if not a strained, construction.

No freedom of interpretation, however, should be indulged to accomplish the forfeiture of property rights. If it had been the design of the framers of the new law that it should apply to members who were already liquor-sellers it is reasonable to suppose that language would have been employed plainly indicating such a purpose, and that there would have been express reference to those who remained in the business as well as to those who entered it. In that case it seems probable, too, that some time would have been fixed within which such persons might save their rights by changing their occupation. It is hardly conceivable that there was a deliberate intention to make the amended law operate as an immediate decree of expulsion against any members who were at the time engaged in the interdicted business. Yet such would be the effect given it by the interpretation proposed by the plaintiff in error. The provision that a member's certificate should become null and void from the date of his engaging in the business also supports the theory that the operation of the enactment was intended to be wholly prospective. We conclude that the law of 1898 did not affect, and was not intended to affect, the standing of Haddock.

This acords with the view taken in *Deuble v. Grand Lodge A. O. U. W.*, 72 N. Y. Supp. 755 (affirmed in 172 N. Y. 665, 65 N. E. 1116). The scope of the opinion, so far as it affects this matter, is shown by the second paragraph of the syllabus, which reads as follows:

"An amendment to the laws of an insurance order, providing that any member who shall, after a specified

date, have entered into the business of selling liquor, or who shall thereafter enter into such business, shall stand suspended from all rights in the beneficiary fund, and his certificate shall become void, does not in terms cover the case of a member who was previously engaged in such business and continued therein."

In the case of *Langnecker v. Trustees of Grand Lodge A. O. U. W. of Wisconsin,* 111 Wis. 279, 87 N. W. 293, 87 Am. St. Rep. 860, 55 L. R. A. 185, it was held that a similar amendment reached the case of a member who, having once abandoned the occupation of selling liquors, afterward reentered it, the discussion clearly indicating, however, that if he had remained continuously in the business he would have been exempt from the operation of the law.

In the case of *Ellerbe v. Faust,* 119 Mo. 653, 25 S. W. 390, 25 L. R. A. 149, in discussing a provision similar to the one under consideration, the writer of the opinion expressed the belief that it was intended to apply to all saloon-keepers who remained in that business, no matter when they entered it, upon the ground that the by-law should be interpreted "so as to meet the abuse or thing prohibited and to correct it if possible." The determination of that case, however, was controlled by other and unassailable reasons, and we cannot regard this *dictum* as seriously impairing the authority of the New York decision.

The judgment is affirmed.

All the Justices concurring.