FRED J. CONNER, Admr., *v.* SUPREME COMMANDERY
GOLDEN CROSS.

(*Knoxville.*   September Term, 1906.)

1. **MUTUAL BENEFIT SOCIETY. By-laws. Reasonable in-crease in rates valid.**
    A by-law or rule of a mutual benefit society making a reasonable
    increase in rates on a certain class of its policy holders, whose
    policies provided that they should be valid and binding "upon
    condition that the member should comply in the future with the
    laws, rules and regulations that may hereafter be enacted by the
    supreme commandery to govern said commandery and fund", is
    enforceable, and does not breach the contract with, nor violate
    any vested rights of, such policy holders, although the by-laws
    provided when the policy was issued to the complaining policy
    holder that members of a certain initiary degree taken by him
    should pay the same amount on each assessment thereafter.

2  **SAME. Same. Member bound by, although insane.**
    A member of a mutual benefit society is bound by a legal and
    reasonable by-law or rule adopted by the society increasing the
    rate of his assessments, although he is insane at the time such
    by-law or rule is adopted.

3. **SAME. Same. Must be reasonable. Remedy, if unreason-able.**
    A by-law or rule of a mutual benefit society increasing the as-
    sessment rates on its members, to be valid must be reasonable;
    and if unreasonable, the member may withdraw and sue for what
    has already been paid, as upon a breach of contract.

4. **SAME. Same. Same. Case in judgment.**
    Complainant's intestate procured a policy in the defendant mut-
    ual benefit society in 1878, at which time his assessment rate
    was $2.17, payable at irregular dates as deaths occurred; in 1900
    the society raised the rate 100 per cent, but required that it be

paid monthly, so that the yearly cost was but little changed; in 1903 the society changed the rates, providing that all members should be assessed at their attained age, except that there should be no increase on a member after seventy-one years of age, and complainant's intestate, who was then about eighty, was assessed $144 a year, as against $52.08, his previous rate. He declined to pay the increased rate in 1903, and died in 1905. His administrator sued to recover the amount of the assessments paid. *Held*, that such increase was not unreasonable and the administrator could not recover.

### FROM KNOX.

Appeal from the Chancery Court of Knox County.—J. W. SNEED, Chancellor.

JNO. W. GREEN, for Conner.

H. T. COOPER, for Golden Cross.

MR. JUSTICE WILKES delivered the opinion of the Court.

This is an action by the administrator of W. A. Conner to recover from the defendant company certain assessments, mortuary calls, and dues paid by the deceased in his lifetime upon a policy of $2,000 in the company.

The right to recover is based upon the theory that the defendant company in May, 1903, increased its rate of assessment on deceased, and thus breached its con-

tract, and forced him out of the company, destroying rights which had vested.

The policy on which the suit is brought was originally issued in 1878, and provided that it should be valid and binding "upon condition that the member should comply in the future with the laws, rules, and regulations that may hereafter be enacted by the supreme commandery to govern said commandery and fund."

The by-laws, among other things, provided that, if a member failed to pay his assessment when due, he should "*ipso facto*" stand disconnected with the order.

The assessment rate of the deceased, when his policy was originally issued and for twenty years thereafter, was $2.17, and payable at irregular dates as deaths occurred.

In 1900 the supreme commandery raised the assessment one hundred per cent., but provided they should be paid monthly, so that the yearly charge was but little changed.

In 1903 the commandery changed the rates, increasing the assessment on the deceased, and providing that all members should be assessed at their attained age, instead of on the basis of age when they entered the order; but there was to be no increase on a member after seventy-one years of age.

When this law went into effect the deceased was over seventy-one years—was in fact about eighty years—old, and his assessment was raised to $12 per month, or $144 per year, when it had theretofore been $52.08 per year.

The sons of deceased had been paying his premiums, but refused to submit to the increased assessment.

The assured died, and this suit was brought to recover the amount paid to the company on the policy, aggregating about $1,500.

No payments were made after September 1, 1903; the assured died February 8, 1905; and this action was brought by the administrator in May, 1905.

The court of chancery appeals finds that the deceased took what is styled the "Golden Star Degree," and that the by-laws then provided that members of the Golden Star degree should pay the same amount on each assessment thereafter while a member of the order; but this was simply the initiating degree, and meant that there was another degree to follow.

The court of chancery appeals finds that, under its modes of assessment prior to 1903, the order had been operated at a loss; that it had not been able to raise enough money to pay its losses by death; that it made the change in good faith, and in order to raise funds to meet death losses, and that some change was imperative; and that the change made in 1903 had the effect to place the order on a better financial basis than it had ever been before.

That court further finds that, when this change was made in 1903, the insured was in such condition, mental and physical, as to be incapable of transacting business, and had been so incapacitated for two or three years before he died.

The court of chancery appeals was of opinion, from the facts found, that the rule increasing the assessments was not unreasonable as to the insured, and did not violate his vested rights, nor breach his contract; and the chancellor was reversed, and complainant's suit was dismissed, and complainant has appealed.

It is said that the fact that the deceased took the Star degree prevented the company from ever after raising the rate upon him.

We think that there is nothing in this. The Star degree was only the initiating degree, and the provision meant simply that the rate would not be increased, except under the rules and by-laws of the company.

Deceased did submit to a raise in the rate before the final raise in 1903, and, so far as we can find, without objection, which carried with it an implication, at least, that he did not consider that being a member of the Star degree entitled him to a fixed rate.

This by-law must be read in connection with the other by-laws and regulations of the company; and the Golden Star degree seems to mean, simply, that the applicant thereby became a member and entitled to a certificate, but he was not exempt from the operation and effect of the other by-laws and regulations.

It is said, in the next place, that the by-law raising assessments would not be binding upon the assured, because he was *non compos* at the time, and was not represented at the meeting, and could not be.

We think that, as stated, there is nothing in this con-

tention. The deceased was bound by the action of the commandery, if it was legal and reasonable, whether present or not, and whether he was at the time sane or insane. But it is evident that the deceased was represented in the matter of this insurance by his sons, who managed the entire matter, even to deciding not to pay the advanced rate.

The controlling, and we may say the only real, question of merit in the case is, was the increase in rates unreasonable, conceding the right under the by-laws to raise the rates? If so, the assured would not be bound to pay and continue a member, but might withdraw, and sue for what had already been paid, as upon a breach of contract.

The rate fixed in 1903 was $144 for the deceased per annum, or $72 on the $1,000, upon a man over eighty years of age. It is true this was quite an advance over the former rate of $26 per $1,000 per annum; but it does not appear, from the proof or the findings of the court of chancery appeals, that this was an unreasonable rate. The expectancy of the assured may be said to have been entirely wiped out; and it was in the course of nature but a short time till the policy would become due. The assured had carried insurance for a long series of years at less than cost. He was required to pay the same rate as all other members in his class; that is, those of the same age, and holding the same kind of policy. The end aimed at by the company was to make each member pay according to the cost of his insurance; and, while

this could not be ascertained with mathematical exactness, still this was the object in view.

The chief complaint seems to be that other younger men were not raised so much in their assessments, and some were even reduced; but this was the result of making the basis of assessment the age of the member and the estimated cost of his insurance.

It was evident that the old plan was a failure, and the court of chancery appeals report that some change in the assessment plan was necessary to accomplish the objects and purposes of the order and to save it from dissolution.

It must be evident that the younger men would not be burdened with the heavy cost of insurance upon the older ones, and they would not join the order, and would withdraw, if such a rule was attempted; and this would leave the older men with no one but the old ones upon whom to rely for their protection.

As we view it, the effect of this rule was only to accentuate the disabilities of old age, after the insured had enjoyed indemnity for many years at less than cost; and we cannot see that the basis of assessments was unreasonable, nor do we find any proof or findings of the court of chancery appeals to that effect.

We know judicially that other companies, in an effort to avoid dissolution and suspension, have adopted similar plans—some under protest, some after suit, and some with acquiescence as the best that could be done.

The case of *Reynolds* v. *Royal Arcanum* (Mass.), 78

N. E., 129, is very similar to this in some respects; and, while we do not wish to be understood as approving that case in all respects, yet the closing sentence of that opinion is appropriate in this case, as follows:

"The members who complain of its action are those who have had the benefit of insurance for themselves and families for many years at very much less than the cost of their insurance to the corporation. They have had the good fortune to survive, and therefore their contracts have brought them no money; but all the time they have had the stipulated security against the risk of death. If they are now called upon to pay for future insurance no more than it cost to the corporation, they ought not to think it unjust. If a party over eighty years of age should ask for insurance in such a company, such a rate would not be considered unreasonable. But a member who has had indemnity for a long term of years at less than cost, and has not contributed to build up any reserve fund, would have no better *status* to demand lower rates than the new applicant."

We see no error in the decree of the court of chancery appeals, and it is affirmed, with costs.