F. M. FORT, Appellee, v. THE IOWA LEGION OF HONOR, Appellant.

Mutual benefit societies: AMENDMENT OF BY-LAWS: RIGHTS OF INSURED. A mutual benefit association may change its by-laws, but can not amend the same in such manner as to affect the promise of the society to pay a particular sum to one of its insured mem-

bers, unless such member by the terms of his contract agreed to conform to and abide by subsequent amendments to the by-laws.

**Same:** AMENDMENT OF CONSTITUTION. Although the constitution of a mutual benefit society contains provisions for its amendment, still the amount of the policy of an insured member can not be reduced by a subsequent amendment to the constitution, where by his contract he is in no manner bound by such subsequent amendments; and in many instances it has been held that even under an agreement on the part of the insured to be bound by subsequent changes, the society can not make essential amendments affecting the rights of insured under his certificate.

**Same:** AMENDMENT OF BY-LAWS. The general power reserved to a mutual benefit society to amend its by-laws, which form a part of the contract of insurance, does not authorize an amendment which will impair the vested rights of its members; but as to what constitutes an impairment of the contract by such amendments the courts are not entirely agreed.

**Same:** RATIFICATION OF AMENDMENTS TO THE CONSTITUTION. The holder of a certificate in a mutual benefit society may ratify subsequent amendments to the by-laws or constitution of the society, not previously agreed to, which will affect his rights under his certificate; but in the instant case the fact that representatives of the subordinate lodge, of which plaintiff was a member, to the grand lodge agreed to certain amendments to the constitution reducing the amount which the society was to pay him under his certificate was not a ratification.

**Same.** Although an insured may have consented to and ratified prior amendments to the constitution of the society, it was not evidence of ratification of amendments subsequently adopted.

**Same:** RESCISSION OF CONTRACT: ACTION FOR DAMAGES. Where a mutual benefit society amended its constitution so as to both increase the rate of assessment of a member and reduce the amount payable under his certificate without his consent, it thus repudiated his existing contract of insurance and justified him in rescinding the contract and bringing suit for damages; and he was under no obligation to tender further assessments under the old rate.

**Same:** DEFENSES: WANT OF FUNDS. Upon repudiation of its contract of insurance by a mutual benefit society the insured may bring his action in damages to recover the amount of premiums paid the society, and it is no objection thereto that the society has no funds with which to pay the judgment except as they may be obtained by assessment of members, or that the measure of damages is so uncertain as to be incapable of admeasurement.

*Appeal from Clinton District Court.*—HON. A. P. BARKER,
Judge.

MONDAY, NOVEMBER 22, 1909.

REHEARING DENIED, SATURDAY, FEBRUARY 19, 1910.

ACTION at law to recover damages for breach of a
contract of insurance entered into by defendant with plain-
tiff, for which breach, consisting of a change in defendant's
constitution, plaintiff claims to have rescinded the contract,
and he asks to recover the amount of premiums paid. The
trial court gave plaintiff judgment, and defendant appeals.
—*Affirmed.*

*Clark & Clark* and *Thomas & Thomas,* for appellant.

*J. M. Fort, pro se.*

DEEMER, J.—Defendant is a mutual benefit society,
organized under the laws of this State, and doing business
on the assessment plan. On April 16, 1881, plaintiff made
application for membership in this organization and on
May 1st of that year a certificate was issued to him. This
certificate contained the following, among other provisions:
"That Brother Francis M. Fort, a member of Maquoketa
Lodge No. 22, of said order, located at Maquoketa, in the
State of Iowa, is entitled to all the rights and privileges
of membership in the Iowa Legion of Honor, and to par-
ticipate in the beneficiary fund of the order to the amount
of two thousand dollars, which sum shall at his death be
paid to his wife, Emma G. Fort. This certificate is is-
sued upon the express condition that said Francis M.
Fort, shall in every particular while a member of said
order comply with all the laws, rules and requirements
thereof." Plaintiff paid all the assessments levied against

him down to July 1, 1907, being two hundred and thirty-seven in number, and at the rate of $1 each until the year 1897, when they were increased to $1.50, when he paid sixty-six at that rate until the year 1907, when the assessment was again increased to $3.20, at which rate he paid seventy-two before failing to respond. He also paid $41 as Grand Lodge dues to the defendant association. He was a member of various subordinate lodges of the defendant order, his final membership being in what is known as "Maquoketa Lodge No. 22." It is agreed:

That at a regular session of the Grand Lodge held in March, 1897, the method of assessment of members was changed from the level rate for all members to the graded rate, which provided that the rate of assessments should be fixed upon a scale dependent upon the age of the member. That the assessment of the plaintiff by virtue of such change became $1.50 per assessment, in place of $1. That afterwards, on or about May, 1901, at a regular session of the Grand Lodge, a further change of rate was made; the new scale of rates being based upon expectancy tables and upon the experience tables of insurance companies. That by such change the assessment rate for the plaintiff was made $3.20 for each assessment. That at the same meeting of the Grand Lodge a policy lien, also based upon expectancy table, was placed against all policies of certificates, which lien, in the case of the plaintiff, amounted to $730, which would make the face of his certificate amount to $1,270 at that time, to which amount was to be added all of the beneficiary assessments afterward paid by plaintiff. It is also agreed: That at a regular session of the Grand Lodge held in May, 1905, a further change in the policy lien plan was adopted in that twenty percent was added to the amount of the lien, which in the case of plaintiff would make the total lien $876, making the amount due upon his certificate in case of death $1,124, to which should be added the amount of assessments paid by the plaintiff commencing with July 1, 1901. That this constitutional amendment took effect on May 17, 1905. That at the regular meeting of the Grand Lodge held in May, 1907, the rates of assessment were changed so as to

fully comply with the experience tables of the National Fraternal Congress of Fraternal Insurance Companies, and this change made the rate of assessment for the plaintiff $3.40. The lien was also changed upon certificates of all members, and in case of plaintiff increased the original lien to $7.75, to which amount was to be added the twenty percent provided by the Grand Lodge of 1905. After deducting this total lien from the certificate, there was to be added to the remainder such sums as he should pay as beneficiary assessments until the total amount payable under the certificate should amount to $2,000.

The parties also stipulated as follows:

That all of said changes were made at the various meetings in the due and regular form provided by said constitution and by-laws. That at the sessions of 1897 and 1901 F. B. Robinson was present and acting as the duly qualified and elected delegate and representative from Sioux Falls Lodge No. 194. That at the session of 1905 B. F. Thomas was present and acting as the duly elected and qualified delegate and representative from Maquoketa Lodge No. 22. That at the meeting of 1907 M. J. Harrington was present and acting as the duly elected and qualified delegate and representative of Maquoketa Lodge No. 22. That at the time of the said meeting of 1901 there was due to beneficiaries of the defendant association on account of death losses the sum of $90,000. That at the time of the meeting of the Grand Lodge in 1905 there was due to beneficiaries on account of death losses the sum of $73,149.80, and at the time of the meeting of the Grand Lodge in May, 1907, there was due to beneficiaries on account of death losses the sum of $90,505.50. That the defendant association at the time and times mentioned had no money or funds with which to pay said losses, and that it depended upon the payments of assessments upon members to procure the necessary funds to pay said losses. That the articles of incorporation of the defendant association provided that 'the particular business and object of said incorporated body shall be to promote fraternity and afford financial aid and benefit to the widows and orphans and heirs or devisees of deceased members of the order.' The object of the defendant organization has been to provide

insurance upon the lives of its members; the funds needed
to pay such insurance being raised by assessments levied
from time to time as the conditions of the association re-
quired.   The assessments levied up to 1901, 1905, and
1907, did not produce a sufficient fund with which to pay
for the losses occasioned by the death of members, leaving
the amount still due to beneficiaries at the time of the
Grand Lodge meetings held in those years as stated herein-
before.  .  .  .   The defendant association publishes, and
has published since the date prior to 1897, an official paper
called the 'Herald,' and that the constitutional changes
adopted in 1897, 1901, 1905, and 1907, were published in
said Herald.   That a copy of said Herald was mailed to
every member of the order at their respective addresses,
and that copies of said papers containing a published state-
ment of the constitutional changes were mailed to the plain-
tiff and received by him some time during the month fol-
lowing the time of the adoption of the several amendments
in the constitution.   That the defendant organization has
been and is still composed of a Grand Lodge and subor-
dinate lodges as provided in the constitution set out in
plaintiff's amendment to this petition.   That the plaintiff
failed to pay the assessments levied upon him in July,
1907, and that he failed to pay any amount to the de-
fendant association.   That, as provided in the constitution
and by-laws, the plaintiff became suspended on account of
his failure to pay said assessment on July 28, 1907.   That
he has since that date paid nothing to the defendant asso-
ciation; that said act of the plaintiff in failing to pay the
assessments called in July, 1907, was a voluntary act on
plaintiff's part; that the defendant association has no
reserve fund except as provided for in the constitution at-
tached hereto, and that the only money to carry on its
business is that derived from assessments called for the
purpose of paying the beneficiaries of deceased members,
and such an amount as is found necessary to pay the run-
ning expenses of the business.

When plaintiff became a member of the society, its
constitution provided that in case of loss an equal assess-
ment was to be made upon all the members to meet the
same.   At a meeting of its Grand Lodge in May of the

year 1901, it amended its constitution by adding a new section:

And thereby a fixed scale of assessments against all members was enacted, rated according to their respective ages at their last birthday, which, in case of plaintiff, was fifty-two years, and the rate he was to pay was fixed at $1.60 per thousand of his certificate, of which twelve assessments per year were to be made. That a lien was thereby created in favor of the beneficiary fund against every beneficiary certificate, including the plaintiff in a sum equal to twelve death assessments per annum for the period of life expectancy of each assured person. That by said amendment an expectancy table was adopted, by which table the plaintiff's expectancy in life was nineteen years, and the lien thus established against his certificate was $730, leaving $1,270 as the amount his beneficiary would have been entitled to, in case of his death, at that time. But it was further thereby provided that upon the amount of said lien should be credited the several amounts subsequently paid by the insured into the General Beneficiary fund, and, in case of his death, before the amount paid by him shall have equaled the amount of such lien, then there shall be deducted from the amount of his policy a sum equal to the difference, and the remainder only shall be paid to the beneficiary under said policy; but, should the payments equal or exceed the amount of such lien, nothing shall be deducted therefrom, and the full amount shall be paid the beneficiary.

Plaintiff ratified this change by paying assessments thereunder without protest. At a meeting of the Grand Lodge of the society held in May, 1907, an amendment to the amended constitution was adopted, which "increased the rates against all members fifty years of age and over, and left unchanged those under fifty years. It increased the monthly assessments from $3.20 to $3.40 per month, and also canceled all of plaintiff's credits for assessments paid under the former amendment, amounting to $230.40, and increased the lien on his certificate from $730 to $775, and added to this a lien of twenty percentum, making a

total lien of $930 against the certificate of the plaintiff, leaving only $1,070 as the amount plaintiff's beneficiary could receive under said amendment, in case of his death."

It was also stipulated between the parties as follows:

That the proceedings of the May, 1907, meeting of the Grand Lodge, at which said changes in the constitution were made, were not published in said Herald until some time during the first half of the month of June, 1907. That the plaintiff had no knowledge of said changes until July 21, 1907, and he did not then know that the table of assessments adopted at said meeting May 22, 1907, increased the assessments of all members over fifty years of age and did not increase those under fifty years of age, and did not know it until August 7, 1907. That he never knew of the change creating the twenty percent lien until July 21, 1907, and did not know that it had been created in 1905 until August 13, 1907, when the president of the defendant told him of its enactment in 1905. All of the above is subject to such knowledge, if any, as would be implied and presumed from the fact of the plaintiff's membership as alleged and set out in the pleadings and this statement, and from the demand and payment of assessments as they became due and were paid by plaintiff, and the receipt by plaintiff of the monthly paper of defendant, sent to and received by plaintiff as referred to in the aforegoing statement and other facts as herein shown. That plaintiff did not pay the assessments or dues for the month of July, 1907, on account of said changes in the constitution made by the Grand Lodge at its meeting of May 22, 1907. The changes made at the Grand Lodge meeting in May, 1907, as far as the lien was concerned, went into effect May 22, 1907, and so far as the assessments were concerned went into effect July 1, 1907, and the constitution and by-laws, being Exhibit 5 of this stipulation, which includes said changes, have, since said dates, been and are now being uniformly enforced. That the assessment and dues for June, 1907, were made, and paid by plaintiff in accordance with the 1901 rates. That on August 10, 1907, plaintiff notified defendant of his election to rescind his certificate or contract of insurance with the defendant, on account of said changes made in the said constitution in

May, 1907, and demanded the repayment to him of all dues and assessments paid by him to said association, and also $1,000 damages sustained by him by reason of defendant's alleged breach of contract of insurance with plaintiff. That defendant has never repaid said assessments, or dues, or damages, or any portion thereof.  Plaintiff has not attended or participated in any meetings of any local lodge of said order, or voted for any delegates to the Grand Lodge since some years prior to 1901, and he has never attended any meeting of the Grand Lodge.  That plaintiff paid as local lodge dues prior to 1901, $40 and since 1901, $12.40.  That on the taking effect of said amended constitution of 1907 the plaintiff's beneficiary, in case of his death at that time, would have received, according to its provisions, only the sum of $1,070.  That the published financial statement made by the defendant in the Herald for month of May, 1907, showed balance in beneficiary fund on May 1, 1907, $1,272.47; received, $8,138.60; orders paid, $7,540.20; balance on hand, $2,050.87; general fund balance May 1, 1907, $1,104.46; received, $876.10; paid out, $1,167.39; balance on hand $795.17. That plaintiff became fifty-nine years of age on November 9, 1907, and that he has arrived at an age which, together with his ill health, makes it impossible for him to obtain insurance in any other association or company, and such was plaintiff's condition May 22, 1907.

It has seemed necessary to recite these facts at length to a better understanding of the question presented.  Plaintiff claims:

That the defendant having by amendment to its constitution in 1901 established a fixed scale of rates, and providing therein they should "remain" as thereby established, and having established a table of life expectancy and a lien of $730 against the plaintiff's certificate cutting it down to $1,270, and having provided therein that upon the amount of said lien should be credited the several amounts subsequently paid by the assured, and the plaintiff having from that time up to May 22, 1907, paid all his assessments under said amendment amounting to $230.40, so that, under the constitution as then amended, his

beneficiary would have received under his policy $1,500, in case of his then death, the defendant had no power, right, or authority to make the changes made in its constitution in 1907, increasing the plaintiff's rate from $3.20 to $3.40 per month, nor to increase the rates of all members over fifty years of age and leave unchanged those under that age, nor to increase said lien from $730 to $930, or other amount, nor to change the time from which said credits of payment should be allowed from May 22, 1901, to May 22, 1907, thereby canceling all payments which plaintiff had made up to that time, amounting to $230.40, and reducing his certificate to $1,070. . . . That the defendant's breach of its contract by making said changes in the constitution May 22, 1907, was a renunciation and repudiation of its said contract with plaintiff, which relieved and excused the plaintiff from further payments. That plaintiff elected to accept said renunciation and rescind said contract, and on August 10, 1907, gave defendant notice thereof, and plaintiff soon thereafter commenced this suit. He did not pay for July on account of 1907 change.

Many matters are relied upon by defendant in defense to plaintiff's action, and, among other things, it is contended: That it had the right to make all the amendments and changes complained of in virtue of the provisions of its constitution and by-laws; that such changes were fair and reasonable and for the best interests of the order; that plaintiff had knowledge of all these changes and accepted, acquiesced in and ratified the same; that plaintiff failed to pay the assessment for July, 1907, and thereupon and for that reason was suspended and ceased to be a member, and all his rights against defendant ceased; that defendant has no right or authority to levy an assessment except to pay death losses and running expenses and no funds and no method whereby to get them in order to pay any judgment which plaintiff may obtain.

The propositions made for appellant in argument, as stated in counsel's brief, are as follows: "(1) After sus-

pension, does the plaintiff retain any right of action on his certificate? (2) The defendant association has no fund from which a judgment, if rendered, could be paid. (3) Did defendant have right to make reasonable changes in its rates of assessment? (4) Were the amendments made by defendant association reasonable? (5) Did the plaintiff have knowledge` of the amendments or changes in rates? (6) The plaintiff by paying assessments in accordance with changes in rates of 1901, 1905, and 1907, ratified, acquiesced, and consented to such changes. (7) The defendant contends that the amendments were reasonable, and for the benefit of all members; but, even if this were untrue, there is no presumption that defendant would not have accepted assessments from plaintiff at the original rates, nor did it give him the right to rescind. (8) If the amendments complained of were unreasonable, what remedy, if any, has the plaintiff?"

Such of these as are deemed material or controlling we shall now consider. The fundamental proposition is the right of the defendant society to make the amendments

1. MUTUAL BENEFIT SOCIETIES: amendment of by-laws: rights of insured.

or changes in its constitution and by-laws, which are shown by this record. Plaintiff's certificate did not expressly provide for any changes or amendments of defendant's articles of incorporation, constitution, or by-laws. The constitution as it stood when plaintiff became a member contained the following provision as to amendments: "The constitution can not be altered or amended unless such alterations or amendments shall be made in writing at a regular session, signed by three representatives; the question shall be taken on their adoption, and if approved by a two-thirds vote of all the representatives present, and entitled to vote, it shall become a part of the constitution." A form of constitution for the government of subordinate lodges also contained the following: "By-laws in conformity with this constitution may be made, and

from time to time altered or amended by submitting the proposition to the lodge, in writing, signed by two members, and having it read at one stated meeting of the lodge previous to being acted on, when, if two-thirds of the votes be in favor of it, it shall be adopted: Provided, they do not contravene or conflict with the laws or constitution of the Grand Lodge or the constitution of. this lodge, or the principles of the order; and shall first be submitted to and be approved by the Grand President, and after such approval all· by-laws contravening or conflicting therewith shall be considered repealed."

As the subordinate lodges of which plaintiff was a member made no changes in the by-laws of which plaintiff is complaîning, we copy this last provision for the purpose of elimination only. It will thus be seen the plaintiff nowhere expressly agreed, as in many of the cases cited and relied upon by appellant, to conform to and abide by any amendments that might thereafter be adopted. Doubtless the association, in the absence of such agreement, had the right to change its by-laws. *Durfee v. R. R.*, 5 Allen (Mass.) 230; *Pain v. Society*, 172 Mass. 319 (52 N. E. 502, 70 Am. St. Rep. 287); *Wright v. Ins. Co.*, 193 U. S. 657 (24 Sup. Ct. 549, 48 L. Ed. 832); *Supreme Lodge v. Knight*, 117 Ind. 489 (20 N. E. 479, 3 L. R. A. 409). But such amendments can not be made of the by-laws as will in any manner affect the promise of the society to pay a particular sum to a member as an insured. As to this the member has the right to rely upon the terms of his contract. *Newhall v. Council*, 181 Mass. 111 (63 N. E. 1); *Langan v. Council*, 174 N. Y. 266 (66 N. E. 932). As said by the Supreme Court of Massachusetts in *Reynolds v. Council*, 192 Mass. 158 (78 N. E. 132), reprinted in 7 Am. & Eng. Ann. Cas. 779: "Most of the cases relied on by the plaintiffs, when rightly analyzed, turn on the distinction between an attempted amendment of the by-laws directly affecting· the promise to the certificate

holder as an insured person and an amendment affecting his duties as a member of the corporation bound to perform his part in providing means or otherwise as one of the association of insurers"—citing many authorities.

The changes and amendments of which plaintiff complains were of the constitution itself, and they not only increased the amount of the assessment which the member was to pay, but they scaled down the amount which the association was to pay him as an insured, and in legal effect reduced the amount of his policy from $2,000 to $1,070, without his personal consent. That this may not be done under an implied agreement to be bound, by subsequent amendments of the constitution, which is the fundamental law of the society, is well settled by authority. *Hobbs v. Assn.*, 82 Iowa, 107; *Sieverts v. Assn.*, 95 Iowa, 710; *Farmers' Ins. Co. v. Slattery*, 115 Iowa, 410; *Field v. Assn.*, 117 Iowa, 185, and cases cited. Even though the constitution contains provisions for amendment, this does not authorize a change of the contract made with the assured which affects his liability as such. See cases above cited and *Pokrefky v. Assn.*, 121 Mich. 456 (80 N. W. 240), and *Peterson v. Gibson*, 191 Ill. 365 (61 N. E. 127, 54 L. R. A. 836, 85 Am. St. Rep. 263). Moreover, many courts have held that, even where there is an agreement on the part of the assured to be bound by subsequent changes, the society can not make essential amendments affecting the rights of the insured as the holder of a benefit certificate. See: *Morton v. Council*, 100 Mo. App. 76 (73 S. W. 259); *Hale v. Aid Union*, 168 Pa. 377 (31 Atl. 1066); *Olson v. Court of Honor*, 100 Minn. 117 (110 N. W. 374, 8 L. R. A. (N. S.) 521; 117 Am. St. Rep. 676); *Strauss v. Mutual Reserve*, 128 N. C. 465 (39 S. E. 55); *O'Neill v. Council,* 70 N. J. Law, 410 (57 Atl. 463); *Supreme Council v. Getz*, 112 Fed. 119 (50 C. C. A. 153). That the certificate issued to plain-

2. SAME: amendment of constitution.

tiff is a contract, see: *Brown v. Iowa Legion of Honor,* 107 Iowa, 439; *Smail v. Court of Honor* (Mo. App.) 117 S. W. 117; *Bornstein v. Grand Lodge,* 2 Cal. App. 624 (84 Pac. 271); *Van Norman v. Brotherhood of Am.,* 134 Iowa, 575; *Underwood v. Iowa Legion of Honor,* 66 Iowa, 134; *Trotter v. Iowa Legion of Honor,* 132 Iowa, 513. That the amendment to the constitution affected the amount to be paid plaintiff or his beneficiary, see: *Supreme Council v. Getz,* 112 Fed. 119 (50 C. C. A. 153); *Shepperd v. Bankers' Union,* 77 Neb. 85 (108 N. W. 188); *Johnson v. Bankers' Union,* 83 Neb. 48 (118 N. W. 1104; *Pokrefky v. Detroit Co.,* 121 Mich. 456 (80 N. W. 240).

With practical unanimity the courts seem to hold that the general power to amend by-laws reserved to a society does not authorize an amendment which impairs the vested rights of the members. See, in addition to cases already cited: *Scow v. Council,* 223 Ill. 32 (79 N. E. 42); *Grand Lodge v. Haddock,* 72 Kan. 35 (82 Pac. 583, 1 L. R. A. (N. S.) 1064); *Ayres v. Grand Lodge,* 188 N. Y. 280 (80 N. E. 1020); *Sautter v. Supreme Conclave,* 72 N. J. Law, 325 (62 Atl. 529). The reason for this rule is so well stated in *Ayres'* case, *supra,* that we quote the following therefrom:

3. SAME: amendment of by-laws.

An amendment of by-laws which form part of a contract is an amendment of the contract itself, and, when such a power is reserved in general terms, the parties do not mean, as the courts hold, that the contract is subject to change in any essential particular at the election of the one in whose favor the reservation is made. It would be not reasonable, and hence not within their contemplation, at least in the absence of stipulations clearly specifying the subjects to be affected, that one party should have the right to make a radical change in the contract, or one that would reduce its pecuniary value to the other. A contract which authorizes one party to change it in any respect that he chooses would in effect be binding upon the other party only, and would leave him at the mercy

of the former, and we have said that human language is not strong enough to place a person in that situation. *Industrial & General Trust, Limited, v. Tod,* 180 N. Y. 215, 225 (73 N. E. 7). While the defendant may doubtless so amend its by-laws, for instance, as to make reasonable changes in the methods of administration, the manner of conducting its business, and the like, no change can be made which will deprive a member of a substantial right conferred expressly or impliedly by the contract itself. That is beyond the power of the Legislature, as well as the association, for the obligation of every contract is protected from State interference by the Federal Constitution (article 1, section 10).

The courts are not agreed, however, as to what constitutes an impairment of the contract. Some of them hold that an amended by-law which increases the amount annually assessed against a member is not an impairment of vested rights. See: *Reynolds v. Council,* 192 Mass. 150 (78 N. E. 129), 7 Am. & Eng. Ann. Cas. 776; *Conner v. Supreme Commandery,* 117 Tenn. 549 (97 S. W. 306); *Gaines v. Supreme Council* (C. C.) 140 Fed. 978. While other courts hold exactly to the contrary. *Wright v. Knights,* 48 Misc. Rep. 558 (95 N. Y. Supp. 996); *Hicks v. N. W. Assn.,* 117 Tenn. 203 (96 S. W. 962). We need not pass upon this troublesome question now, for it seems to be universally held, as already indicated, that a benefit society can not diminish the amount payable to a member or his beneficiary under his certificate by the enactment of a subsequent by-law, resolution, or amendment to the constitution without the consent of the insured. *Evans v. Assn.,* 182 N. Y. 453 (75 N. E. 317). See, also, cases cited in note to *Gillmore v. Knights,* 1 Am. & Eng. Ann. Cas. 717.

Save, then, as plaintiff consented to or ratified the different amendments made by the defendant, he is not bound thereby. That the subordinate lodge or lodges of which he was a member sent a representative to the Grand

Lodge of which he was a member, and who agreed to the amendments, is of no moment. Such representative had no right to bind the plaintiff or to agree to a change of his contract rights. *Hill v. Mutual Reserve Fund & Co.,* 128 N. C. 463 (39 S. E. 56); *Supreme Council v. Jordan,* 117 Ga. 808 (45 S. E. 33); *Supreme Council v. Getz,* 112 Fed. 119 (50 C. C. A. 153).

**4. SAME: ratification of amendments to the constitution.**

The trial court may well have found that plaintiff consented to, acquiesced in, and ratified all changes in the constitution adopted prior to the year 1907, but was perfectly justified in finding that there was no acquiescence in, agreement to, or ratification of the amendment adopted by the Grand Lodge in the year 1907. Being a law case, we must accept this latter conclusion of fact as true. *Supreme Council v. Batte,* 34 Tex. Civ. App. 456 (79 S. W. 629). That plaintiff agreed to prior amendments is no evidence that he agreed to subsequent ones, and having agreed to prior ones he is not estopped from challenging the validity of illegal subsequent ones. *Benjamin v. Mutual Reserve Co.,* 146 Cal. 34 (79 Pac. 522); *Schultz v. Ins. Co.,* 59 Minn. 308 (61 N. W. 331); *Insurance Co. v. Kentner,* 188 Ill. 431 (58 N. E. 966). Defendant does not plead waiver or estoppel, and that alone would be a sufficient answer to its present claim with reference to this issue sought to be made in the brief. Indeed, it does not plead any acceptance of or agreement to the changes made in the year 1907.

**5. SAME.**

II. By the amendments to its constitution at the Supreme Lodge session held in the year 1907, to which we have referred, the defendant not only increased the annual assessments and made other changes therein, but it also scaled down the amount of plaintiff's certificate without his consent, thus announcing its intention not to carry out

**6. SAME: rescission of contract: action for damages.**

its previous contract with the plaintiff. This justified him in rescinding the contract and bringing suit for its breach. *Van Weren v. Assn.,* 99 Iowa, 621; *Supreme Council v. Black,* 123 Fed. 650 (59 C. C. A. 414); *Wuerfler v. Trustee, etc.,* 116 Wis. 19 (92 N. W. 433, 96 Am. St. Rep. 940); *Supreme Council v. Batte,* 34 Tex. Civ. App. 456 (79 S. W. 629). Plaintiff was not obliged thereafter to tender any assessments, but might treat his contract as rescinded. *Roehm v. Horst,* 178 U. S. 1 (20 Sup. Ct. 780, 44 L. Ed. 953). By the amendment passed in the year 1907, all assessments paid by plaintiff since the year 1901 were canceled and a lien established as of date May 22 of the year 1907, and the increase of rates was to take effect as of July 1, 1907. Had plaintiff tendered the increased assessment, he would doubtless have waived the deduction made of his policy. He was not obliged to tender assessments under the old rate, for defendant had repudiated those already paid and had adopted a new rate for a diminished policy. *O'Neill v. Supreme Council,* 70 N. J. Law, 410 (57 Atl. 463); *Benjamin v. Mutual Reserve,* 146 Cal. 34 (79 Pac. 517); *Langnecker v. Grand Lodge,* 111 Wis. 279 (87 N. W. 293, 55 L. R. A. 185, 87 Am. St. Rep. 860). Defendant's claim that plaintiff ceased to be a member because he failed to pay his assessments, and therefore can not complain of the changes in the contract, is without merit. Plaintiff does not claim to be a member. His right of action is not bottomed on that theory. His contention is that defendant repudiated its contract with him, and he wants damages because of that fact. If he were a member in good standing and had paid the increased assessments, his present action would not lie. Indeed, it is doubtful if either he or his beneficiary would have had any remedy had he kept up his assessments until his death.

III. It is true, as defendant contends, that some courts have held that plaintiff's remedy is by *mandamus,*

or some form of action other than that for damages. See:
*Lavalle v. Society,* 17 R. I. 680 (24 Atl. 467, 16 L. R. A. 393); *Langan v. Supreme Council,* 174 N. Y. 266 (66 N. E. 932).

7. SAME:
defenses:
want of
funds.

One reason given for these holdings is that, as plaintiff is a member of a mutual benefit society which has no funds save as they may be obtained by assessments, he can not bring action for damages against it; it having no funds to pay judgments and being under no obligation to pay to one member more than to another. Another reason given is that the measure of damages is so uncertain as to be incapable of admeasurement, and that in such cases plaintiff's remedy is either by *mandamus* or in equity to enforce specific performance; but this rule has not been generally accepted. On the contrary, it has been expressly disaffirmed in: *Lahiff v. St. Joseph,* 76 Conn. 648 (57 Atl. 692, 65 L. R. A. 92, 100 Am. St. Rep. 1012); *Thompson v. Grant International, etc.,* 41 Tex. Civ. App. 176 (91 S. W. 834); *O'Neill v. Supreme Council,* 70 N. J. Law, 410 (57 Atl. 463); *Makely v. Supreme Council,* 133 N. C. 367 (45 S. E. 649). We have also disapproved it in: *Van Weren v. Society,* 99 Iowa, 621; *Farmer Co. v. Slattery,* 115 Iowa, 410. See, also, *Ebert v. Mutual Reserve,* 81 Minn. 116 (83 N. W. 506, 834, 84 N. W. 457). The reasons for this rule are so well stated in the *Van Weren* case that we need do no more than refer thereto without quoting what was said. It is no defense that defendant had no funds with which to pay the judgment. *Van Norman v. Modern Brotherhood,* 134 Iowa, 575; *Ebert v. Reserve Co.,* 81 Minn. 116 (83 N. W. 506, 834, 84 N. W. 457).

IV. Defendant, as will be observed, makes no claim that the measure of damages adopted by the trial court was erroneous. This is due perhaps to our decision in the *Van Meter* case, *supra.* In view of this situation, it is unnecessary to discuss the question. As

applied to benefit associations such as the defendant, there is much ground for saying that the amount of premiums paid with interest should not be the true measure of recovery. However, there are several cases making the rule applicable to such societies as the defendant, and we are not disposed, in view of the record before us, to do more than say that the question is not properly before us, and therefore not decided.

Having now considered all the points presented in appellant's brief and argument, and finding no error, the judgment of the district court must be and, it is, *affirmed.*